# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* HILL, Minors.

UNPUBLISHED
December 27, 2016

No. 332923
Alger Circuit Court
Family Division
LC No. 2013-004455-NA

Before: BORRELLO, P.J., and SAWYER and MARKEY, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to the minor children JH and AH pursuant to MCL 712A.19b(3)(c)(*i*) and (*ii*). For the reasons set forth in this opinion, we affirm.

## A. BACKGROUND

On May 22, 2013, petitioner filed a petition seeking removal of the children from the home based on lack of appropriate housing, the parents' substance abuse and criminality. The petition indicated that the children were Indian children. At a hearing conducted before a referee on May 22, 2013, respondent appeared *in propria persona*, and an attorney for the Sault Ste. Marie Tribe of Chippewa Indians appeared by telephone. The referee read the petition, which detailed respondent's histories of substance abuse and criminal conduct. The referee ordered that the children be removed from the home, but adjourned the proceedings pending appointment of attorneys for the parents and the children.

The preliminary hearing continued on June 12, 2013. Respondent was incarcerated in the county jail and appeared at the hearing by video conference. Respondent and the father of the children waived the remaining hearing proceedings and the referee authorized the filing of the petition.

The trial court held a plea hearing on August 26, 2013. Respondent was incarcerated in prison and appeared by telephone. Petitioner's counsel indicated that respondent would admit some of the allegations in the petition and plead no contest to the remaining allegations. Respondent testified that she was incarcerated and that her earliest release date was April 7, 2014. She agreed that due to her multiple incarcerations, she had been unable to maintain housing for her children. She agreed that she had used controlled substances during her pregnancies, and that she had been unable to put her children's needs above her drug use and her criminal activity. Respondent also stated that she recalled testifying at her probation violation

-1-

hearing. The trial court stated that one or more allegations in the petition were proven by respondent's own testimony and the court took jurisdiction over the children.

At a hearing on January 6, 2014, the trial court adopted petitioner's recommendations that respondent comply with the treatment plan and ordered that the children remain in foster care. Thereafter, the trial court held several dispositional review hearings. At a review hearing on July 8, 2015, respondent's counsel indicated that respondent was employed, had negative drug tests, and was doing well in parenting time. However, respondent had been charged with assault and the charge was still unresolved. The trial court continued the children's placements and continued services.

The trial court held a review hearing on February 3, 2016. Petitioner noted that respondent-father and the children were disenrolled from the Tribe and were no longer considered Indian children. The trial court maintained the status quo pending the filing of a petition to terminate respondent's parental rights.

On February 22, 2016, petitioner filed a supplemental petition seeking to terminate respondent's parental rights pursuant to MCL 712A.b(3)(c)(*i*), (c)(*ii*), (g), and (j). The petition noted that on May 20, 2013, respondent was sentenced to 20 months to five years in prison for unlawfully driving away an automobile, MCL 750.413, and was paroled on October 28, 2014. The petition stated that respondent had violated her parole on four occasions and had been convicted of assault and had served jail terms for the offenses. The petition alleged that respondent had participated in substance abuse treatment, but had been unable to stop using drugs. The petition stated that respondent still had barriers to reunification, including "substance abuse, criminal behaviors, and incarceration, leaving her unavailable to fully parent and assure the safety and well-being of the minor children."

The termination hearing began on April 21, 2016.[1] Alyssa Calhoun, respondent's caseworker, testified that the goal changed from reunification to termination of parental rights in February 2016. Calhoun testified that respondent was offered various services, including bus passes, family continuity, parenting education, drug screens, substance abuse treatment, supervised parenting time and family team meetings. Calhoun stated that respondent failed to comply with the services.

William Schieding, respondent's parole officer, testified that respondent's parole began in October 2014. Schieding stated that respondent had been charged with four parole violations. In March 2015, she had contact with an unauthorized person and possessed narcotics that were not prescribed to her. Respondent served 14 days in jail for the violation. In June 2015, respondent violated her parole by being charged with aggravated assault. She served 39 days in jail for the offense. In October 2015, respondent violated her parole by testing positive for drugs

---

[1] Heidi Cotey, an expert witness from the Sault Ste. Marie Tribe of Chippewa Indians, testified at the termination hearing. However, because the children were no longer considered Indian children by the time of the termination hearing, the trial court stated that it did not consider Cotey's testimony when making its decision to terminate respondent's parental rights.

that were not prescribed to her. Schieding stated that respondent was doing well at the time, so she served five days in jail and attended outpatient drug treatment. In January 2016, respondent violated her parole by having contact with an unauthorized person and possessing unauthorized narcotics. Respondent served 45 days in jail and participated in outpatient substance abuse treatment. Schieding could not say that respondent had fallen back into drug use, but she continued to put herself into negative social situations. However, Schieding testified that respondent was attempting to comply with her treatment plan. Schieding believed that respondent could successfully complete her parole, but he was unsatisfied with respondent's ability to maintain employment.

Alyssa Calhoun, respondent's caseworker, testified that the children had been out of respondent's care for nearly three years, since they were 1-1/2 years old and five to six weeks old, respectively. Calhoun stated that respondent participated in services while she was in prison, including a domestic violence program that included a segment on how to avoid violence. Calhoun acknowledged that respondent was charged with aggravated assault in June 2015. Calhoun also stated that respondent continued to bring the father into the children's lives in some ways and opined that respondent's action was not beneficial to the children because the father's parental rights had been terminated. Calhoun stated that respondent failed to appear for several required random drug screens. Calhoun noted that on two occasions the agency attempted to increase respondent's parenting time with the goal of moving toward unsupervised parenting time, but the efforts were derailed because respondent became incarcerated on both occasions. In addition, when respondent began dating a felon and a drug user she was not available to exercise parenting time. Calhoun stated that respondent rejected the assertion that her dating relationship was a bad influence on her life. Calhoun opined that respondent had not substantially complied with her treatment plan. Calhoun stated that respondent's parental rights should be terminated and that termination was in the best interests of the children.

Cheryl Fields, respondent's witness and a counselor, testified that respondent was compliant with her program and had benefitted from counseling. Fields stated that respondent had realized that her impulsive behavior had negative consequences and had become more deliberate in her decision making. Fields opined that respondent had the skills necessary to care for her children.

Respondent testified that she had appropriate housing for the children and was employed on a full-time basis. Respondent stated that she was more motivated to hold employment since she was released from prison. Respondent acknowledged that for a short time she used Tramadol that was not prescribed to her and that she used Neurontin on her parenting time days to make her more aware. Respondent stated that she no longer associated with persons with whom she had used drugs, and that she concentrated on undertaking sober activities. Respondent stated that she participated in counseling and benefitted from it and that she hoped to be able to afford to participate in more substance abuse counseling. Respondent stated that she had a good support system that would assist her in caring for the children when she was working. Respondent acknowledged that her children needed her during the periods when she was unavailable to them, but stated that her priorities had changed and that the children now came first in her life. Respondent also acknowledged that since she was released from prison in October 2014, she had spent 104 days in jail on parole violations.

Sasha Howard, respondent's friend, testified that she had daily contact with respondent. Howard stated that respondent had become more responsible since she was released from prison, and that she was making a sincere effort to improve her life. Howard stated that respondent had a strong bond with her children and was ready to have her children returned to her.

Heather MacArthur, respondent's friend since childhood, testified that since respondent was released from prison, she was much more responsible and thought about the consequences of her actions. MacArthur would not hesitate to allow respondent to watch her own children, and opined that respondent would be a good parent.

After hearing the evidence, the trial court terminated respondent's parental rights. The trial court acknowledged that respondent had made substantial progress, but noted that progress began after the termination petition was filed. The trial court also noted that respondent had stable housing and had no positive drug screens since her latest release from jail. However, the trial court found that respondent's statements were inconsistent with her actual behavior. Respondent had four parole violations since she was released from prison, and had not substantially complied with her case service plan. The trial court emphasized that it viewed the latter to be much more significant. The trial court acknowledged that from the time jurisdiction was taken until respondent was released from prison on October 28, 2014, respondent did not have a reasonable opportunity to address her parenting issue. The trial court noted, however, that after being released from prison, respondent demonstrated poor judgment in regard to complying with her treatment plan. She refused to participate in family continuity services and failed to appear for drug screens. The trial court expressed concern that respondent failed to appear because she was hiding drug use and noted that respondent returned to using Tramadol in September and October of 2015 after testing positive for that drug.

In addition, the trial court noted that in October 2015, respondent started dating a known drug user who had a controlled substance conviction notwithstanding that her parole officer and her caseworker advised her against doing so. This relationship led to respondent's fourth parole violation. The trial court found that respondent exercised extremely poor judgment by allowing the person to stay at her home even for a short time. The trial court reasoned that the evidence supported terminated pursuant to MCL 712A.19b(3)(c)(*i*) and (c)(*ii*).

The trial court also found that termination of respondent's parental rights was in the best interests of the children. The trial court acknowledged that respondent loved the children and was bonded with them. Nevertheless, the trial court concluded that the bond did not outweigh the children's need for permanence and stability and found that respondent could not provide that permanence and stability within a reasonable time. This appeal ensued.

B. ANALYSIS

I. ADJUDICATION/ACCEPTANCE OF PLEA

Respondent argues that her plea proceeding was defective and violated her due process rights. "Whether child protective proceedings complied with a parent's right to procedural due process presents a question of constitutional law, which we review de novo." *In re Sanders*, 495

Mich 394, 403-404; 852 NW2d 524 (2014). An unpreserved issue is reviewed for plain error affecting substantial rights. *In re Utrera*, 281 Mich App 1, 8-9; 761 NW2d 253 (2008).

In challenging the court's acceptance of her plea, respondent challenges the adjudicative phase of the proceeding. "In Michigan, child protective proceedings comprise two phases: the adjudicative phase and the dispositional phase." *In re Sanders*, 495 Mich at 404. In general, during the first phase a trial court determines if there are grounds for it to take jurisdiction over the children. *Id.* "Once the court has jurisdiction, it determines during the dispositional phase what course of action will ensure the child's safety and well-being." *Id.*

"Petitioner may initiate child protective proceedings by filing a petition containing facts that constitute an offense against the child under the juvenile code." *In re Collier*, ___Mich App___; ___NW2d___(2016) slip op. at 5 (internal quotations and citations omitted). "The parent may demand an adjudication trial at which he has a right to a jury trial and at which the rules of evidence generally apply, or he may admit to the allegations contained in the petition." *Id.* (quotation marks omitted). "The petitioner has the burden of proving by a preponderance of the evidence one or more statutory grounds for jurisdiction alleged in the petition, MCR 3.972(E)." *Id.* (quotation marks omitted). "'When the petition contains allegations of abuse or neglect against a parent . . . and those allegations are proved by a plea or at the trial, the adjudicated parent is unfit.'" *Id.*, quoting *In re Sanders*, 495 Mich at 405.

When a trial court finds grounds for jurisdiction based on a parent's plea, the court must adhere to MCR 3.971 in accepting the plea. In this case, the trial court failed to adhere to procedure set forth in MCR 3.971, yet it nevertheless assumed jurisdiction over the children. The issue, then, is whether respondent can challenge the court's assumption of jurisdiction or whether this constitutes an impermissible collateral attack on the court's jurisdiction.

In the context of a child custody case, there are two types of challenges to the court's jurisdiction: (1) a challenge for want of jurisdiction, which may be raised at any time; and (2) a challenge on "matters affecting the court's exercise of its jurisdiction," which "may be challenged only on direct appeal of the jurisdictional decision." *In re Kanija*, 308 Mich App 660, 667; 866 NW2d 862 (2014) (citation omitted).

*In re Sanders*, 495 Mich at 394, illustrates a permissible challenge to a court's want of jurisdiction. In *Sanders*, the trial court adjudicated the respondent mother as unfit, but dismissed the allegations against the respondent father. Nevertheless, the trial court, relying on the one-parent doctrine,[2] limited the respondent father's contact with his children and required him to comply with a service plan. *Sanders*, 495 Mich at 407. Our Supreme Court held that the one-parent doctrine was unconstitutional, stating that "due process requires a specific adjudication of a parent's unfitness before the state can infringe the constitutionally protected parent-child relationship." *Id.* at 422. Thus, because the trial court never adjudicated the respondent father,

---

[2] The one-parent doctrine allowed a court to enter dispositional orders affecting the parental rights of both parents even if jurisdiction was established by adjudicating only one parent as unfit. *Sanders*, 495 Mich at 407.

the court did not obtain jurisdiction to enter dispositional orders affecting the respondent father's parental rights and, on appeal, the respondent father could challenge the court's lack of jurisdiction. *In re Kanjia*, 308 Mich App at 670-671.

In contrast, where a court adjudicates a parent, assumes jurisdiction, yet nevertheless makes errors during the process, the respondent must directly appeal the court's jurisdictional order as opposed to waiting to raise the issue until after the termination. *In re SLH*, 277 Mich App 662, 668; 747 NW2d 547 (2008); *In re Hatcher*, 443 Mich 426, 444; 505 NW2d 834 (1993). That is, "[m]atters affecting the court's exercise of its jurisdiction may be challenged only on direct appeal of the jurisdictional decision." *In re Kanija*, 308 Mich App at 667. Thus, "when a termination occurs following the filing of a supplemental petition for termination after the issuance of the initial dispositional order . . . an adjudication cannot be collaterally attacked following an order terminating parental rights." *In re SLH*, 277 Mich App at 668.

In this case, respondent contends that the trial court erred in accepting her plea because it did not adhere to the procedural steps set forth in MCR 3.971. However, this argument constitutes an impermissible collateral attack on matters affecting the court's jurisdiction. *In re Kanija*, 308 Mich App at 667. Here, respondent received an adjudication; she was present during the adjudication and she was represented by counsel. Respondent and her counsel were aware of the adjudication and could have filed a direct appeal. However, respondent failed to directly appeal the court's exercise of jurisdiction following the adjudication and termination of her parental rights occurred following the issuance of an initial dispositional order and pursuant to a supplemental petition. Because respondent was present and represented by counsel at the adjudication, the trial court did not violate her due process rights when it assumed jurisdiction and respondent cannot collaterally attack the errors in the assumption of jurisdiction. *Id.*; see also *In re Hudson*, 294 Mich.App 261, 264; 817 NW2d 115 (2011) (noting that a "[r]espondent may not assign as error on appeal something that [ ]he deemed proper in the lower court because allowing [him] to do so would permit respondent to harbor error as an appellate parachute.")

Respondent contends that her argument should not be considered a collateral attack on jurisdiction and she cites *In re Wangler/Paschke*, 498 Mich at 911 in support of that argument. However, respondent's argument is misplaced. In *Wangler/Paschke*, our Supreme Court explained that the respondent's argument was not a collateral attack on jurisdiction where the trial court "purported to issue dispositional orders *without first adjudicating the respondent-mother*." *Id.* (emphasis added). In contrast, in this case, the trial court adjudicated respondent *before* entering dispositional orders and before it terminated respondent's parental rights pursuant to a subsequent petition. Accordingly, unlike the challenge in *Wangler/Paschke*, here, respondent's argument constitutes a collateral attack on the court's jurisdiction that we decline to consider on appeal. See *In re SLH*, 277 Mich App at 668; *In re Hatcher*, 443 Mich 426, 444; 505 NW2d 834 (1993).

In addition, this case is dissimilar to *In re Collier*, ___ Mich App at ___ wherein this Court refused to hold that the collateral-attack rule precluded the respondent's challenge to a termination order. In *Collier*, the trial court entered a default against the respondent after the respondent failed to appear at the adjudication hearing and subsequently terminated the respondent's parental rights. The *Collier* Court vacated the termination order, in part, on their finding that the respondent was deprived of an adjudication hearing. *Collier*, slip op at 5-6.

Unlike in *Collier*, as discussed above, in this case respondent was adjudicated. Respondent was present at the adjudication and was represented by counsel. Thus, the factors which were present in *Collier* are not present in this case. As such, *Collier* does not govern the outcome of this case.

In sum, the trial court adjudicated respondent and then terminated respondent's rights pursuant to a subsequent petition and after it entered the initial dispositional order. Respondent failed to raise a direct appeal following the adjudication and her argument on appeal constitutes an impermissible collateral attack on the court's assumption of jurisdiction. *In re SLH*, 277 Mich App at 668.

## II. INDIAN FAMILY PRESERVATION ACT

Next, respondent argues that the trial court erred during the proceeding when it declined to make a finding as to whether the children were Indian children. We review de novo a trial court's interpretation of statutes, but review a trial court's findings of fact for clear error. *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 56; 874 NW2d 205 (2015).

The issue whether the children are Indian children implicates the Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq.*, and the Michigan Indian Family Preservation Act (MIFPA), MCL 712B.1 *et seq.* Section 1903 of the ICWA defines "Indian child" as follows:

> (4) "Indian child" means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.] [25 USC 1903(4).]

Section 3 of the MIFPA defines "Indian child" as follows"

> (k) "Indian child" means an unmarried person who is under the age of 18 and is either of the following:

> (i) A member of an Indian tribe.

> (ii) Eligible for membership in an Indian tribe as determined by that Indian tribe. [MCL 712B.3(k).]

A higher burden of proof is required in a termination case involving an Indian child or children.[3] However, in this case, the Sault Ste. Marie Tribe of Chippewa Indians determined that Ryan Hill, the children's father and the person through whom the children's eligibility for membership was determined, was improperly enrolled as a member of the Tribe, and so

---

[3] In a termination case involving an Indian child or children, a trial court must find that at least one state statutory ground for termination of parental rights was proven by clear and convincing evidence, and must also make findings that active efforts were made to avoid the breakup of the Indian family, and that those efforts were unsuccessful. 25 USC 1912(e); MCL 712B.15(3).

disenrolled him and the children. After being notified of the Tribe's action, the trial court noted that it did not determine who was or was not a member of the Tribe and that the decision rested within the exclusive discretion of the Tribe. Respondent asserts that the trial court should have determined whether the children were eligible for membership in the Tribe, notwithstanding the Tribe's decision that Ryan Hill was not eligible for membership.

Respondent's argument is without merit. It is undisputed that the Tribe determined that Ryan Hill was not eligible for membership, and that the children's eligibility depended on Hill's eligibility. Respondent points to no authority that would allow the trial court, as opposed to the Tribe, to determine if a person is eligible for membership in the Tribe. Further, respondent's argument would have the effect of allowing a Michigan family court to overrule the Tribe's decision regarding the children's eligibility for membership. It should be noted that that in addition, the Tribe made its decision as to membership based on the statutory definitions of "Indian child." Our review of the statute clearly indicates that the Tribe correctly concluded that the children were not eligible for membership. The children were not the biological children of a member of a Tribe, and so did not qualify under the ICWA. The Sault Ste. Marie Band of Chippewa Indians determined that the children were not members and did not qualify for membership; therefore, the children did not qualify under the MIFPA.

In sum, the trial court did not err in declining to question the Tribe's determination that the children were not members of the Tribe.

III. TERMINATION AND SERVICES

Next, respondent argues that DHHS failed to provide adequate services for reunification and that the trial court erred in finding statutory grounds for termination and in finding that termination was in the children's best interests.

The petitioner bears the burden of proving a statutory ground for termination by clear and convincing evidence. MCL 712A.19b(3); *In re Trejo*, 462 Mich. 341, 350; 612 NW2d 407 (2000). We review for clear error a circuit court's decision to terminate parental rights. MCR 3.977(K); *In re JK*, 468 Mich 202, 209; 661 NW2d 216 (2003). Similarly, we review the trial court's findings of fact, including a finding that the DHHS made reasonable efforts toward reunification, for clear error. *In re Fried*, 266 Mich.App 535, 541-543; 702 NW2d 192 (2005). A decision qualifies as clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re JK*, 468 Mich at 209-210.

i. SERVICES

Respondent contends that DHHS failed to offer her adequate services that would facilitate reunification.

Before a court may contemplate termination of a parent's right to her child, the petitioner generally "must exert 'reasonable efforts' to maintain the child in [the parent's] . . . care, MCL 712A.18f(1), (4)," and "make 'reasonable efforts to reunite the child and family.' MCL 712A.19a(2)." *In re Hicks/Brown*, ___Mich App___; ___NW2d___ (2016) (Docket No. 328870); slip op at 6. A failure by petitioner to offer a respondent a reasonable opportunity to

participate in services creates a gap in the record that requires reversal of an order terminating parental rights. *In re Mason*, 486 Mich 142, 158-160; 782 NW2d 747 (2010). However, a respondent also has a responsibility to participate in services offered by petitioner. *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012).

Respondent contests the trial court's finding that petitioner made reasonable efforts to reunify the family by providing services. Respondent notes that during the termination hearing, petitioner's witnesses testified that respondent was offered various services both while she was incarcerated and after she was released from prison. During respondent's incarceration, she participated in services such as Healing Trauma; a domestic violence program; Alcoholics Anonymous meetings; parenting skills; and writing to the children and speaking to them by telephone. Following respondent's release from prison, petitioner provided services including wraparound (a family continuity program); bus tickets and other transportation assistance; assistance with employment; drug screens; Alcoholics/Narcotics Anonymous meetings and substance abuse counseling; parenting education; supervised parenting time; and individual counseling. Respondent asserts that she did not need the family continuity and parenting classes, and that substance abuse treatment was provided through her parole program. Respondent contends that in effect, petitioner provided only bus tickets, supervised parenting time, and family meetings, and that this level of services was inadequate.

Respondent's argument is without merit. The evidence directly contradicts respondent's assertion that she was not offered services while she was incarcerated. Respondent acknowledges that petitioner offered her various services after she was released from prison, but asserts that she did not need some of these services. For example, respondent alleges that she spoke with her caseworker and decided that she did not require family continuity services; however, her caseworker testified that respondent missed six of nine appointments with the family continuity worker and decided on her own that she did not need the services because she had a residence and a job. Respondent alleges that her participation in the SPAN drug testing program was terminated due to her work schedule and the fact that the program was phased out in Alger County; however, her caseworker testified that not all of respondent's missed appointments were due to a work conflict, and that her participation was terminated before the program was phased out of the county.

Respondent appears to argue that only the services she thought she needed should count as services actually offered. However, no statute or caselaw allows a respondent to decide which services are to be offered in the case. Petitioner has a statutory duty to formulate a case service plan detailing efforts to be made both by petitioner and the parent to return the child to the home. MCL 712A.18f(2)-(3). Petitioner offered services to respondent as required. The fact that respondent did not fully engage in the services does not mandate a conclusion that the services were inadequate. In short, the trial court did not clearly err in finding that petitioner offered services and made reasonable efforts at reunification. *In re Fried*, 266 Mich App at 541-543.

## ii. STATUTORY GROUND FOR TERMINATION

Respondent argues that the trial court clearly erred in finding statutory grounds for termination.

The trial court terminated respondent's parental rights in part pursuant to MCL 712A.19b(3)(c)(*i*), which provides that termination is proper where clear and convincing evidence shows that:

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

Here, the conditions that led to adjudication included lack of appropriate housing, substance abuse and criminality. Respondent states that at the termination hearing the evidence showed that she had appropriate housing, had completed substance abuse treatment and had substantially complied with her treatment plan, and had not committed any substantial criminal offenses. Respondent argues that no evidence demonstrated that she could not effectively parent her children within a reasonable time.

Respondent's argument is without merit. The trial court acknowledged that respondent loved her children and had made some progress in addressing the issues that led to the children being removed from her care. However, the trial court concluded that it could not overlook the facts that respondent, in the 18 months since she was released from prison in October 2014, had been found in possession of narcotics not prescribed to her, had amassed four parole violations, including one for assaultive behavior, had been incarcerated for those violations, and had associated with a known felon and drug user. In addition, the trial court noted that respondent seemed to cooperate with services offered to her only if she believed that she needed the services. On this record, we are not left with a definite and firm conviction that the trial court erred in finding clear and convincing evidence to support termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*). Because there was one ground for termination, we need not address the additional grounds upon which the trial court based its decision. *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011).

iii. BEST INTERESTS

Respondent argues that the trial court erred in finding that termination was in the children's best interests.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). In determining a child's best interests, the trial court may consider the child's need for stability and permanency and whether the child is progressing in its current placement. *In re VanDalen*, 293 Mich App 120, 141; 809 NW2d 412 (2011). In addition, the trial court may consider the children's bond to the parent, the parent's parenting

ability, and the advantages of a foster home over the parent's home. *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012).

At the time of the termination hearing, the children had been out of respondent's care for nearly three years, i.e., nearly their entire lives. The trial court acknowledged that respondent and the children shared a bond, and did not find that respondent was a bad parent. However, the trial court noted that respondent continued to engage in behaviors that caused the children to be removed from her custody, and that respondent's actions had resulted in her being incarcerated on several occasions, albeit for short periods. Essentially, the trial court found that the children deserved more than respondent had demonstrated she could or would offer. The trial court did not clearly err in finding that termination of respondent's parental rights was in the best interests of the children.

Affirmed.

/s/ Stephen L. Borrello
/s/ David H. Sawyer
/s/ Jane E. Markey