# Court of Appeals, State of Michigan

# ORDER

In re S Kanjia Minor

Docket No.    320055

LC No.    11-053881-NA

Stephen L. Borrello
Presiding Judge

Deborah A. Servitto

Douglas B. Shapiro
Judges

The Court orders that the motion for reconsideration is GRANTED, and this Court's opinion issued October 21, 2014 is hereby VACATED. A new opinion is attached to this order.

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

DEC 3 0 2014
Date

Chief Clerk

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* S. KANJIA, Minor.

FOR PUBLICATION
December 30, 2014
9:00 a.m.

No. 320055
Kent Circuit Court
Family Division
LC No. 11-053881-NA

Before: BORRELLO, P.J., and SERVITTO and SHAPIRO, JJ.

SHAPIRO, J.

Respondent father appeals as of right the trial court order terminating his parental rights to the minor child under MCL 712A.19b(3)(c)(*ii*) (failure to rectify other conditions causing the child to come within the court's jurisdiction) and (3)(g) (failure to provide proper care and custody). For the reasons set forth below, we vacate the order of termination and remand for further proceedings.

Following the entry of the termination order, respondent filed an appeal by right. On April 23, 2014, respondent's appointed appellate counsel moved this Court to allow him to withdraw his representation pursuant to MCR 7.211(C)(5), asserting that he could not identify any appellate issues of legal merit, thereby rendering the appeal wholly frivolous.[1] This Court denied the motion and ordered counsel to address two issues: (1) whether the termination must be vacated in light of our Supreme Court's opinion in *In re Sanders*, 495 Mich 394; 852 NW2d 524 (2014), and (2) whether respondent's appointed trial counsel was ineffective where counsel had no contact with respondent for ten months after her appointment and only met with respondent after the trial court had authorized the filing of a supplemental petition to terminate respondent's parental rights.[2]

---

[1] See *Anders v California*, 386 US 738; 87 S Ct 1396; 18 L Ed 2d 493 (1967).

[2] *In re S Kanjia Minor*, unpublished order of the Court of Appeals, entered June 18, 2014 (Docket No. 320055).

## I. APPLICATION OF *IN RE SANDERS*

Respondent argues that, in light of *Sanders*, his adjudication in these child protective proceedings violated his procedural due process rights.[3]

## A. ADJUDICATION IN CHILD PROTECTIVE PROCEEDINGS AND THE ONE-PARENT DOCTRINE

"In Michigan, child protective proceedings comprise two phases: the adjudicative phase and the dispositional phase." *Sanders*, 495 Mich at 404. "Generally, a court determines whether it can take jurisdiction over the child in the first place during the adjudicative phase." *Id*. Jurisdiction is established pursuant to MCL 712A.2(b). *Id*. "When the petition contains allegations of abuse and neglect against a parent, MCL 712A.2(b)(1), and those allegations are proved by a plea or [by a preponderance of the evidence] at the [adjudication] trial, the adjudicated parent is unfit." *Id*. at 405. "While the adjudicative phase is only the first step in child protective proceedings, it is of critical importance because the procedures used in the adjudicative hearings protect the parents from risk of erroneous deprivation of their parental rights." *Id*. at 405-406 (quotations and citation omitted).

Child protective proceedings are initiated by the state filing a petition in the family division of the circuit court requesting the court take jurisdiction over a child. *Id*. at 405. A respondent-parent may admit to allegations in the petition, plead no contest to the allegations, or demand a trial. *Id*. In any event, to take jurisdiction over a child, the trial court must find that the petitioner has proven by a preponderance of the evidence that one or more statutory grounds for the taking of jurisdiction alleged in the petition. *Id*. If the court takes jurisdiction over the child, the proceedings enter the dispositional phase, wherein the trial court has broad authority to effectuate orders aimed at protecting the welfare of the child, including ordering the parent to comply with the Department of Human Services (DHS) case service plan and ordering the DHS to file a petition for the termination of parental rights if progress is not being made. *Id*. at 406-407.

Before *Sanders* was decided, pursuant to the one-parent doctrine, a trial court was not required to adjudicate more than one parent; instead, a trial court could establish jurisdiction over a minor child by virtue of the adjudication of only one parent, after which it had authority to subject the other, unadjudicated parent to its dispositional authority. *Id*. at 407. See *In re CR*, 250 Mich App at 202-203.

> In simpler terms, the one-parent doctrine permits courts to obtain jurisdiction over a child on the basis of the adjudication of either parent and then proceed to the dispositional phase with respect to both parents. The doctrine thus eliminates the petitioner's obligation to prove that the unadjudicated parent is unfit before that

---

[3] "Whether child protective proceedings complied with a parent's right to procedural due process presents a question of constitutional law, which we review de novo." *Sanders*, 495 Mich at 403-404.

parent is subject to the dispositional authority of the court.  [*Sanders*, 495 Mich at 408.]

However, in *Sanders*, our Supreme Court held that the one-parent doctrine violated procedural due process.  *Id*. at 422.  Recognizing that the right of a parent to make decisions concerning the care, custody, and control of his or her children is fundamental, *id*. at 409, and that due process "demands minimal procedural protections be afforded an individual before the state can burden a fundamental right," *id*. at 410, our Supreme Court held that a parent must be individually adjudicated as unfit before the state can interfere with his or her parental rights, *id*. at 415, 422.  Because the one-parent doctrine allowed a trial court to interfere with the constitutionally protected parent-child relationship without any finding that the parent was unfit, it violated the Due Process Clause of the Fourteenth Amendment.  *Id*. at 422.  To comply with due process requirements, the state is required to do the following:

When the state is concerned that *neither* parent should be entrusted with the care and custody of their children, the state has the authority – and the responsibility – to protect the children's safety and well-being by seeking an adjudication against *both* parents.  In contract, when the state seeks only to deprive *one* parent of the right to care, custody and control, the state is only required to adjudicate *that* parent.  [*Id*. at 421-422.]

## B.  RESPONDENT'S CASE

The child protective proceedings in respondent's case began on November 29, 2011, when the DHS filed a petition requesting the removal of the child from the home of his mother,[4] who was not living with respondent at the time.  The petition alleged, as grounds for the taking of jurisdiction, that a parent of the child had neglected or refused to provide proper care and support, MCL 712A.2(b)(1), and that the home environment, by reason of neglect, cruelty, drunkenness, criminality or depravity on the part of a parent, had become unfit for the children, MCL 712A.2(b)(2).[5]  At the December 1, 2011 preliminary hearing, at which respondent was not present, the trial court found probable cause that one or more of the allegations in the petition was true and authorized the filing of the petition.  The court then placed the child with the DHS, which subsequently placed the child in a licensed foster home.

An adjudication hearing was held on January 20, 2012.  Respondent was present at the hearing.  The child's mother pleaded no contest to the allegations in the petition.  The trial court founds that grounds for jurisdiction over the child pursuant to MCL 712A.2(b) existed based on mother's plea and independent evidence substantiating the allegations in the petition.

The trial court in this case clearly applied the one-parent doctrine when subjecting respondent to its dispositional authority, and consequently, under *Sanders*, respondent's due

---

[4] The child's mother is not party to this appeal.

[5] The particular facts of the petition are irrelevant to this issue on appeal.

process rights were violated when his parental rights were terminated. The original petition focused on mother, and contained only two allegations concerning respondent—that he was the putative father of the child, and that mother had previously been involved with the DHS because of domestic violence with respondent. Mother entered a no-contest plea to the allegations against her, thereby allowing the trial court to assume jurisdiction over the child. However, petitioner did not pursue any allegations against respondent at the adjudication trial, and respondent did not enter a plea. Consequently, he was never adjudicated as unfit by the trial court. In fact, the trial court's February 13, 2012 order of adjudication did not even name respondent himself as a respondent. Nonetheless, respondent was subjected to the trial court's dispositional authority; he was ordered to comply with a parent-agency treatment plan and ultimately his parental rights were terminated. Thus, under *Sanders*, respondent's due process rights were violated.

Despite the merit of respondent's claim, whether he is entitled to relief depends on two questions: first, whether he may now raise the issue for the first time on direct appeal from the order of termination, and second, whether *Sanders* applies retroactively to his case, which was pending on appeal at the time *Sanders* was decided. We answer these questions in the affirmative.

## C.  COLLATERAL ATTACK

It is a well-settled rule that "[o]rdinarily, an adjudication cannot be collaterally attacked following an order terminating parental rights" unless "termination occur[ed] at the initial disposition as a result of a request for termination contained in the original, or amended, petition[.]" *In re SLH*, 277 Mich App 662, 668-669; 747 NW2d 547 (2008). Instead, "[m]atters affecting the court's exercise of its jurisdiction may be challenged only on direct appeal of the jurisdictional decision[.]" *In re Gazella*, 264 Mich App 668, 679-680; 692 NW2d 708 (2005). See also *In re Hatcher*, 443 Mich 426, 437; 505 NW2d 834 (1993) (whether a trial court properly exercised jurisdiction over a child can only be challenged on direct appeal). We have continually invoked this rule to preclude collateral challenges to a trial court's exercise of jurisdiction, including in cases—before *Sanders* was decided—where the challenge related to the trial court's use of the one-parent doctrine. See, e.g., *In re Wangler*, 305 Mich App 438, 445-448; 853 NW2d 402 (2014) (holding that the respondent's challenge to the trial court's exercise of jurisdiction—based on the fact that a written plea was allegedly invalid and the fact that the respondent was not present at the adjudication trial—was collateral, and therefore precluded); *In re Curran*, unpublished opinion per curiam of the Court of Appeals, issued May 15, 2014 (Docket No. 317470), p 8 (finding that the respondent mother had waived any challenge to the trial court's adjudication, "ostensibly based on the one-parent doctrine," by failing to directly appeal the jurisdictional decision); *In re Coleman*, unpublished opinion per curiam of the Court of Appeals, issued June 18, 2013 (Docket No. 313610), p 4 (declining to examine the substance of the respondent's argument that the trial court "misapplied the one-parent doctrine to obtain

jurisdiction" because the argument "constitute[d] a collateral attack regarding adjudication-jurisdiction matters").[6]

Assuming a *Sanders* challenge constitutes an attack on jurisdiction, respondent is generally precluded from now raising the issue since it would constitute a collateral attack: his rights were terminated following a supplemental petition and he did not appeal the initial order of adjudication. However, no case has yet decided whether the rule prohibiting collateral attack of a trial court's exercise of jurisdiction applies to cases in which the rule announced in *Sanders* applies. In the only case decided since *Sanders* to acknowledge this issue, a panel of this Court expressly declined to address "whether a *Sanders*-related challenge may be raised as a collateral attack on appeal." *In re Cochran*, unpublished opinion per curiam of the Court of Appeals, issued July 22, 2014 (Docket No. 319813), p 4 n 5.[7] Notably, this Court in *Cochran*, *id*., implicitly concluded that a *Sanders* challenge to a trial court's order of termination constitutes a collateral attack on the trial court's exercise of jurisdiction, and other opinions from this Court have expressly declared that a challenge to the trial court's use of the one-parent doctrine constitutes a collateral attack on jurisdiction. See *Curran*, unpub op at 8; *Coleman*, unpub op at 4.

Nonetheless, we conclude that a *Sanders* challenge, raised for the first time on direct appeal from an order of termination, does not constitute a collateral attack on jurisdiction, but rather a direct attack on the trial court's exercise of its dispositional authority. In *Sanders*, our Supreme Court distinguished between adjudicated and unadjudicated parents; it held that "due process requires a specific adjudication of a parent's unfitness before the state can infringe the constitutionally protected parent-child relationship." *Sanders*, 495 Mich at 422. In other words, the Court in *Sanders* held that due process prevents a trial court from entering dispositional orders—including orders of termination—against an unadjudicated respondent. Based on this reasoning, a respondent who raises a *Sanders* challenge on direct appeal from a trial court's order of termination is not collaterally attacking the trial court's exercise of jurisdiction, but rather is directly challenging the trial court's decision to terminate the respondent's parental rights without first having afforded the respondent sufficient due process, i.e., an adjudication hearing at which the respondent's fitness as a parent was decided.

---

[6] "Although unpublished opinions of this Court are not binding precedent, they may, however, be considered instructive or persuasive." *Paris Meadows, LLC, v Kentwood*, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010) (citations omitted).

[7] In *Cochran*, this Court first noted the general rule prohibiting collateral attacks on a trial court's exercise of jurisdiction, after which it concluded that the respondent was "barred from attacking the trial court's adjudication." *Cochran*, unpub op at 4 n 5. However, this Court nevertheless addressed the issue because the respondent's appeal was pending at the time *In re Sanders* was decided. *Id*. It did so, however, without deciding whether, in other cases, a *Sanders* challenge could be raised on collateral attack from an order of termination. *Id*. This Court ultimately found the respondent's argument to be without merit. *Id*. at 4.

It also noteworthy that, in finding the one-parent doctrine unconstitutional, the Court in *Sanders* recognized the inherent problem in requiring an unadjudicated parent to directly appeal an order of adjudication: "as a nonparty to those proceedings, it is difficult to see how an unadjudicated parent could have standing to appeal any unfavorable ruling." *Sanders*, 495 Mich at 419. Such is the case here. Because respondent was never adjudicated, and in fact was not named as a respondent in the trial court's order of adjudication, it is difficult to see how he could have appealed that order of adjudication. *Id*. The hurdles to a direct appeal from the order of adjudication are further demonstrated by the fact that, in the instant case, respondent did not have an attorney at the time the trial court entered its order of adjudication. Thus, it would have been exceedingly difficult, if not effectively impossible, for respondent to have challenged the trial court's exercise of jurisdiction in a direct appeal from the order of adjudication.

Accordingly, we find that the general rule prohibiting a respondent from collaterally attacking a trial court adjudication on direct appeal from a termination order does not apply to cases where a respondent raises a *Sanders* challenge to the adjudication. Therefore, we hold that respondent is entitled to raise his *Sanders* challenge on direct appeal from the trial court's order of termination, notwithstanding the fact that he never appealed the initial order of adjudication.

## C. RETROACTIVITY

Because we conclude that respondent is entitled to raise his *Sanders* challenge on direct appeal from the trial court's order of termination, we must next decide whether the holding in *Sanders* applies to his case.[8] *Sanders* was not decided until June 2, 2014, approximately six months after the trial court in this case terminated father's parental rights. However, respondent's appeal was pending before this Court at the time *Sanders* was decided.

"'The general rule in Michigan is that appellate court decisions are to be given full retroactivity unless limited retroactivity is justified.'" *Jahner v Dep't of Corrections*, 197 Mich App 111, 113; 495 NW2d 168 (1992), quoting *Fetz Engineering Co v Ecco Systems, Inc*, 188 Mich App 362, 371; 471 NW2d 85 (1991). "'[L]imited retroactivity' is the favored approach 'when overruling prior law.'" *Jahner*, 197 Mich App at 114, quoting *Tebo v Havlik*, 418 Mich 350, 360; 343 NW2d 181 (1994). Moreover, "[p]rospective application is warranted when overruling *settled* precedent or deciding cases of first impression whose result was not clearly foreshadowed." *Jahner*, 197 Mich App at 114 (internal quotations and citation omitted). See *Lindsey v Harper Hosp*, 455 Mich 56, 68; 564 NW2d 861 (1997) ("[W]here injustice might result from full retroactivity, this Court has adopted a more flexible approach, giving holdings limited retroactivity or prospective effect."). Decisions that are given limited retroactivity apply to pending cases where the issue was raised and preserved. *McNeel v Farm Bureau Gen Ins Co of Mich*, 289 Mich App 76, 95 n 7; 795 NW2d 205 (2010) (quotations and citations omitted); *Jahner*, 197 Mich App at 115-116. Decisions that are applied only prospectively "do not apply to cases still open on direct review" or to "the parties in the cases in which the rules are declared." *McNeel*, 289 Mich App at 94. "In deciding whether to give retroactive application,

---

[8] The retroactivity of a court's ruling presents of a question of law reviewed de novo. *People v Maxson*, 482 Mich 385, 387; 759 NW2d 817 (2008).

'[t]here are three key factors' to be considered: '(1) the purpose of the new rule; (2) the general reliance on the old rule; and (3) the effect on the administration of justice.' " *Jahner*, 197 Mich App at 114, quoting *People v Hampton*, 384 Mich 669, 674; 187 NW2d 404 (1971).

After reviewing these factors and the parties' arguments concerning their application, we conclude that full retroactivity of the rule in *Sanders* is justified. As to the first factor, the purpose of the rule articulated in *Sanders* is to safeguard the due process rights of parents who have not been found unfit and to assure that the state shows that a child's parent is unfit before interfering with parental rights. Proper protection of those rights constitutes a substantial and weighty purpose. Indeed, as stated in *Sanders*, the importance of such a purpose "cannot be overstated," *id*. at 415, since the adjudication trial "is the only fact-finding phase regarding parental fitness" and no other phase of the proceedings adequately prevents the possible erroneous deprivation of the fundamental right, *id*. at 417-418. Turning to the second factor, reliance on the old rule, *Jahner*, 197 Mich App at 114, the one-parent doctrine has been relied upon in numerous cases since *CR* was decided and, until *Sanders* was decided, the DHS and the trial court would have been justified in relying on *CR* and the one-parent doctrine. On its face, therefore, this factor weighs against retroactivity, as it would burden the state with additional procedures in cases where it had justifiably relied upon the one-parent doctrine. However, petitioner DHS, the state agency with the authority and duty to act in these matters, takes the view that application of *Sanders* to *all* cases still pending on direct appeal would not constitute an administrative burden, at least not one sufficient to outweigh the interests of justice and fairness provided by retroactive application. Moreover, the *Sanders* decision rested, at least in part, on the due process guarantee of the United States Constitution and, where federal law is concerned, full retroactivity is the rule. *Harper v Virginia Dep't of Taxation*, 509 US 86, 97; 113 S Ct 2510; 125 L Ed 2d 74 (1993) ("When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule.").

Finally, with respect to the third factor, the effect on the administration of justice, *Jahner*, 197 Mich App at 114, "there is no doubt that requiring adjudication of each parent will increase the burden on the state in many cases." *Sanders*, 495 Mich at 417. However, requiring adjudication of each parent before subjecting that parent to the trial court's dispositional authority also "significantly reduce[s] any risk of a parent's erroneous deprivation of the parent's right to parent his or her children[,]" *id*., a risk which outweighs any burden imposed upon the state, *id*. at 418-419. Accordingly, we hold that *Sanders* should be given full retroactive effect to all cases pending on direct appeal at the time it was decided.

## D. CONCLUSION

We hold that a respondent may raise a *Sanders* challenge to a trial court's adjudication in a child protective proceeding on direct appeal from the trial court's order terminating that respondent's parental rights. That is, such an appeal does not constitute an impermissible collateral attack on the trial court's adjudication. We further hold that *Sanders* is to be given full

retroactive effect to all cases pending on direct appeal at the time it was decided.  Accordingly, we vacate the lower court's order terminating respondent's parental rights and remand for further proceedings consistent with this opinion and *Sanders*.[9]  We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Stephen L. Borrello
/s/ Deborah A. Servitto

---

[9] In light of our holding, we need not consider respondent's other arguments on appeal.