# STATE OF MICHIGAN

# COURT OF APPEALS

In re B. HADD, Minor.

UNPUBLISHED
September 12, 2017

Nos. 337095; 337097
Bay Circuit Court
Family Division
LC No. 14-011751-NA

Before: Hoekstra, P.J., and Meter and K. F. Kelly, JJ.

PER CURIAM.

In these consolidated appeals, respondent-mother (Docket No. 337095) and respondent-father (Docket No. 337097) appeal as of right the trial court's orders terminating their parental rights to a minor child pursuant to MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), (j), and (l). We affirm in both appeals.

## I. STATUTORY GROUNDS FOR TERMINATION

Both respondents argue that the trial court erred in finding that the statutory grounds for termination were established by clear and convincing evidence. We disagree.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). We review for clear error a trial court's ruling that a statutory ground for termination has been proven by clear and convincing evidence. *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *Id*.

The trial court found that grounds for terminating respondents' parental rights were established under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), (j), and (l), which authorize termination of parental rights under the following circumstances:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

(*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

* * *

(l) The parent's rights to another child were terminated as a result of proceedings under section [MCL 712A.2] or a similar law of another state.

Preliminarily, we note that this Court has declared § 19b(3)(l) unconstitutional because it violates the due process protections of the federal and state constitutions. *In re Gach*, 315 Mich App 83, 97; 889 NW2d 707 (2016). However, only one statutory ground for termination need be established in order to support termination of parental rights. *In re VanDalen*, 293 Mich App at 139. Because we conclude that the trial court did not clearly err in finding that grounds for termination were established under §§ 19b(3)(c)(*i*), (c)(*ii*), (g), and (j) with respect to both respondents, any error in relying on § 19b(3)(l) was harmless.

## A. RESPONDENT-MOTHER

The trial court did not clearly err in finding that termination of respondent-mother's parental rights was justified under § 19b(3)(c)(*i*). The trial court's reliance on this ground was based on the fact that respondent-mother had not addressed her substance-abuse issues during the 24 months that the child was under the court's jurisdiction. The court also noted that respondent-mother had failed to address her mental-health issues, which had plagued her for years. These findings are supported by the evidence. In her plea of admission to allegations in the petition, respondent-mother admitted the underlying facts supporting the earlier termination of her parental rights to her other children. These facts included respondent-mother's long-term problems with mental health and substance abuse, including that she had tested positive for

various controlled substances when she gave birth to some of her other children, and that at least one other child tested positive for marijuana at birth. Respondent-mother admitted that, in a prior case, she "didn't participate [in services] or . . . just admitted that [she wasn't ready] to handle a baby . . . ." Respondent-mother also admitted that she tested positive for THC while pregnant with the child at issue in the present case. Respondent-mother pleaded no contest to the allegation that her home had a strong odor of marijuana after the birth of the child at issue. Respondent-mother also admitted that she had been in counseling but was not currently participating in any services.

Throughout the case, respondent-mother continued to test positive for marijuana, she never obtained a recommended psychiatric evaluation, and she refused to release her psychological-evaluation records to her therapist. While she half-heartedly participated in counseling efforts, she stopped attending counseling in August 2016. Respondent-mother also was hostile and aggressive throughout the case. Respondent-mother appears to dispute that the minor child was born with marijuana in her system. Respondent-mother relies on a court-ordered blood-serum test that was performed more than four months after the child's birth in order to determine the extent of the child's marijuana exposure. Although that test was negative for the *continued* presence of marijuana in the child's system, review-hearing exhibits indicated that marijuana was present in the child's system at the time of the child's birth. Moreover, we note that respondent-mother failed to take the child for testing on two prior occasions before doing so in January 2015. Considering respondent-mother's failure to resolve her marijuana abuse, and her lack of progress with services after approximately two years, the trial court did not clearly err in finding that termination of respondent-mother's parental rights was justified under § 19b(3)(c)(*i*).

In support of its reliance on § 19b(3)(c)(*ii*), the trial court referred to the fact that respondent-mother made no progress throughout the case, and failed to benefit from services. Although the court did not identify any specific new condition, respondent-mother certainly had fair notice and the opportunity to rectify the conditions set forth in her treatment plan. That plan recommended a psychological evaluation, which respondent-mother obtained. However, the evaluation recommended that respondent-mother complete a psychiatric evaluation to determine her medication needs, which she never completed. Considering respondent-mother's history and the fact that the minor child had spent virtually her entire life in care, the trial court did not clearly err in finding that this condition would not be rectified within a reasonable time.

The same evidence also supports the trial court's reliance on §§ 19b(3)(g) and (j). The trial court noted that respondent-mother never acknowledged that her marijuana use might be unhealthy or harmful for the child, that she refused to take the child to have the serum test done, and that she had not progressed beyond supervised parenting time after two years of services. The trial court also cited respondent-mother's failure to consistently attend scheduled services, and respondent-mother's failure to address her anger issues. The court found that due to respondent-mother's failure to address the barriers to parenting, she was not in a position to provide the stability and protection necessary to keep the child safe from harm. The evidence supports the trial court's findings. After more than two years, respondent-mother failed to make more than minimal progress with her treatment plan. She continued to use marijuana, did not fully participate in counseling, and canceled or was late to visitations. "A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to

provide a child proper care and custody." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014). "Similarly, a parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *Id*. The trial court did not clearly err in finding that grounds for terminating respondent-mother's parental rights were established under §§ 19b(3)(g) and (j).

## B. RESPONDENT-FATHER

Respondent-father does not make a specific challenge for each ground for termination. Instead, he challenges some of the court's underlying factual findings in general and its justifications for determining that petitioner had established the statutory grounds for termination.

Respondent-father argues that the trial court violated his rights under the Michigan Medical Marihuana Act (MMMA), MCL 333.26371 *et seq*., by terminating his parental rights to the child. Citing MCL 333.26424(a),[1] he contends that he could not be denied custody or have his parental rights terminated because of his continued medical use of marijuana. However, a parent's right to custody or visitation when the parent holds a valid medical-marijuana card is addressed in MCL 333.26424(d), which provides:

> A person shall not be denied custody or visitation of a minor for acting, in accordance with this act, unless the person's behavior is such that it creates an unreasonable danger to the minor that can be clearly articulated and substantiated.

We reject respondent-father's reliance on the MMMA for two reasons.

First, respondent-father is not currently entitled to claim protection under the MMMA because the record discloses that his medical-marijuana registry card expired in February 2016. Respondent-father never presented any evidence that his card was renewed or that he continued to have a medical need for marijuana.

Second, the record does not indicate that the trial court denied respondent-father custody or terminated his parental rights because he obtained a medical-marijuana card or because of his actions *in accordance with the MMMA*. First, contrary to respondent-father's assertion that the child was removed from his home primarily due to his marijuana use, testimony was presented that respondents repeatedly failed or refused to take the child to have her blood serum tested for marijuana exposure. The trial court focused on *the child's* marijuana exposure, rather than respondent-father's marijuana use, as a circumstance that led to the child's removal. Second, in

---

[1] MCL 333.26424(a) provides, in pertinent part:

> A qualifying patient who has been issued and possesses a registry identification card is not subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege . . . for the medical use of marihuana in accordance with this act . . . .

its findings after the termination hearing, the trial court emphasized respondent-father's marijuana use despite the *expiration* of his MMMA card. Moreover, in terminating respondent-father's parental rights, the trial court relied on respondent-father's utter failure to cooperate with and complete the terms of his treatment plan. The court found that respondent-father had "continually refused to accept responsibility for [the child] coming into care," and that his lack of participation in services and testing was indicative of a lack of judgment and an inability to comprehend the gravity of the situation and behaviors. The court also found that one of the significant issues in the case was the aggressive and destructive behavior of both respondents.[2] The court found that respondent-father had not demonstrated any significant change in this regard, and that his aggressive and destructive behavior throughout the case continued to demonstrate a lack of control. These findings, unrelated to respondent-father's marijuana use under the MMMA, are not clearly erroneous and support the trial court's determination that termination of respondent-father's parental rights was justified under § 19b(3)(c)(*i*).

The court found that respondent-father repeatedly rejected the recommendation in his psychological evaluation that he explore alternative treatment options. Although the caseworker and respondent-mother's counsel found another psychologist to reevaluate respondent-father after he expressed disagreement with his initial evaluation, respondent-father was never re-evaluated because he refused to cooperate with the new evaluator. Respondent-father also failed to present evidence of his condition justifying a medical need for marijuana or that marijuana was a recommended treatment for it. This evidence supports the trial court's reliance on § 19b(3)(c)(*ii*).

In addition, respondent-father's refusal to participate in his treatment plan is evidence of his failure to provide proper care and custody for the child, and evidence that the child would likely be harmed if returned to respondent-father's care, thereby supporting termination under §§ 19b(3)(g) and (j). *In re White*, 303 Mich App 710. Respondent-father's abandonment of counseling further supports the trial court's finding that he would not be able to care for the child within a reasonable time. In addition, respondent-father's home was found unsuitable, and he and his mother did not attempt to schedule a second home visit. Respondent-father intimates that it was petitioner's fault that a new home study was not completed after the home was initially found unsuitable. However, the caseworker testified that licensing workers tried to reschedule a home visit after respondent-father's mother cancelled the previous one due to a death in the family, but respondent-father's mother never called to reschedule.

In sum, the trial court did not clearly err in finding that grounds for terminating respondent-father's parental rights were established under §§ 19b(3)(c)(*i*), (c)(*ii*), (g), and (j).

---

[2] At the plea hearing leading to the adjudication, the court "incorporated by reference" the allegations in the petition that a prior termination had been based, in part, on the parties' violent tendencies. The parties admitted that "what [had] happened" with regard to the prior termination was that they released their parental rights after the various allegations.

## II. BEST INTERESTS

Both respondents also argue that the trial court erred in finding that termination of their parental rights was in the child's best interests. We disagree. MCL 712A.19b(5) provides that "[i]f the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." We review for clear error a trial court's determination whether termination of parental rights is in a child's best interests. *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 63; 874 NW2d 205 (2015). Factors to be considered in determining a child's best interests include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012). (Citations omitted). A court may also consider whether it is likely "that the child could be returned to her parents' home within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012).

### A. RESPONDENT-MOTHER

The trial court did not clearly err in finding that termination of respondent-mother's parental rights was in the child's best interests. At the time of the termination hearing, respondent-mother had made only minimal progress with her treatment plan, she continued to have substance-abuse issues, she had not scheduled a home visit, she had been sporadic in attending therapy, and she had not obtained a psychiatric assessment. The case had been pending for approximately two years, with little progress. Although the caseworker admitted that the child's continued placement in her foster home was not guaranteed, that home had provided the child with stability and it appeared that it would do so for the foreseeable future. The foster mother answered "[y]es" when asked if she was willing to provide a stable environment for the child "from here on out." In contrast, the caseworkers agreed that, considering respondent-mother's lack of progress, she would not be able to provide a stable home for the child within a reasonable time. The trial court's reliance on respondent-mother's past unsuccessful history with services and the prior terminations to find that she would not be able to provide the child with a stable home within the foreseeable future is supported by the evidence, and thus is not clearly erroneous.

### B. RESPONDENT-FATHER

The trial court also did not clearly err in finding that termination of respondent-father's parental rights was in the child's best interests. Respondent-father was minimally compliant with his treatment plan. Although he may have had a medical basis for using marijuana, he let his marijuana card lapse and provided no underlying documentation substantiating his continued medical need for marijuana. He also stopped participating in therapy. He minimizes the fact that he would not let the caseworker into a room of his home during the first home visit and did not follow through with arranging a second one. Although he contends that this situation could have been remedied, he made little effort to do so. Respondent-father's minimal participation in services during the two years the child remained under the court's jurisdiction supports the trial court's finding that he was not particularly interested in acting as a full-time parent to the child. In contrast, the foster home was meeting the child's needs and providing the stability the child

required. Respondent-father contends that apart from his marijuana use, there was no other evidence of neglect throughout the case. Although he relies on testimony that he acted appropriately with the child during visits, those visits were in a controlled, supervised setting. After more than two years, respondent-father never progressed beyond supervised visitation. The fact that respondent-father did not neglect the child while with her for short periods of time does not render the trial court's best-interests determination erroneous.

## III. RESPONDENT-FATHER'S REMAINING ISSUES IN DOCKET NO. 337097

### A. RESPONDENT-FATHER'S PLEA TO JURISDICTION

Respondent-father argues that the trial court violated MCR 3.971(B)(4) by failing to advise him at the time of his plea that the plea could be used as evidence in a later proceeding to terminate his parental rights. Respondent-father acknowledges that he failed to preserve this issue by challenging the validity of his plea in the trial court. This Court generally reviews unpreserved issues for plain error affecting substantial rights. *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). In this case, however, we conclude that appellate review of this issue is foreclosed because respondent-father is not permitted to collaterally attack the trial court's exercise of jurisdiction following the termination of his parental rights pursuant to a supplemental petition.

Absent certain exceptions, a trial court's exercise of jurisdiction over a child must be challenged in a direct appeal from the initial dispositional order. See MCR 3.993(A)(1). The court's jurisdictional decision cannot be collaterally attacked when "termination occurs following the filing of a supplemental petition for termination after the issuance of the initial dispositional order." *In re SLH*, 277 Mich App 662, 668; 747 NW2d 547 (2008); see also *In re Hatcher*, 443 Mich 426, 439; 505 NW2d 834 (1993), and *In re Kanjia*, 308 Mich App 660, 667; 866 NW2d 862 (2014). Exceptions have been recognized when a trial court exercises jurisdiction under the "one-parent doctrine," *id.* at 669, and when the trial court fails to *both* timely appoint counsel and "to advise the respondent that his plea could later be used in a proceeding to terminate his parental rights," *In re Mitchell*, 485 Mich 922; 773 NW2d 663 (2009), but none of these exceptions apply in the instant case. Because respondent-father cannot collaterally attack the trial court's exercise of jurisdiction in the instant appeal, we reject this claim of error.

### B. DIFFERENT EVIDENTIARY STANDARDS

Respondent-father observes that the rules of evidence generally do not apply to termination proceedings, MCR 3.977(H)(2), but that legally admissible evidence is required when termination of parental rights is requested on the basis of one or more circumstances new or different from the circumstances that led the court to take jurisdiction, MCR 3.977(F). On appeal, respondent-father argues that because some of the requested statutory grounds for termination were based on the same circumstances that led the court to take jurisdiction, and some were based on new or different circumstances, the trial court erred by failing to hold separate hearings to consider the different grounds, and by basing its decision on certain evidence that was not legally admissible. Respondent-father did not object below to the trial court holding a single hearing to decide the various requested statutory grounds for termination,

nor did he object to the admission of any challenged evidence or to the trial court's consideration of any evidence. Therefore, this issue is unpreserved. *Polkton Twp v Pellegrom*, 265 Mich App 88, 95; 693 NW2d 170 (2005). We review unpreserved issues for plain error affecting substantial rights. *In re TK*, 306 Mich App at 703.

MCR 3.977(F) provides, in pertinent part:

> The court may take action on a supplemental petition that seeks to terminate the parental rights of a respondent over a child already within the jurisdiction of the court on the basis of one or more circumstances new or different from the offense that led the court to take jurisdiction.
>
> (1) The court must order termination of the parental rights of a respondent, and must order that additional efforts for reunification of the child with the respondent must not be made, if
>
> (a) the supplemental petition for termination of parental rights contains a request for termination;
>
> (b) at the hearing on the supplemental petition, the court finds on the basis of clear and convincing legally admissible evidence that one or more of the facts alleged in the supplemental petition
>
> (*i*) are true; and
>
> (*ii*) come within MCL 712A.19b(3)(a), (b), (c)(*ii*), (d), (e), (f), (g), (i), (j), (k), (l ), (m), or (n); and
>
> (c) termination of parental rights is in the child's best interests.

Conversely, if termination of parental rights is not requested on the basis of different circumstances pursuant to subrule (F), the admissibility of evidence is governed by MCR 3.977(H)(2), which provides:

> The Michigan Rules of Evidence do not apply, other than those with respect to privileges, except to the extent such privileges are abrogated by MCL 722.631. At the hearing all relevant and material evidence, including oral and written reports, may be received by the court and may be relied upon to the extent of its probative value. The parties must be afforded an opportunity to examine and controvert written reports received by the court and shall be allowed to cross-examine individuals who made the reports when those individuals are reasonably available.

Contrary to what respondent-father argues, the court rules do not require a trial court to conduct separate hearings when termination is requested under multiple grounds, some based on the circumstances that led the court to take jurisdiction, and some based on new or different circumstances. Rather, the court rule merely prescribes different evidentiary standards for

certain types of evidence. Thus, the trial court's failure to conduct separate hearings on the different requested grounds for termination was not plain error.

Respondent-father identifies his psychological report as an example of the type of evidence he contends was required to be legally admissible. However, respondent-father's counsel expressly stated at a review hearing that he had "no objection" to the admission of this report. Respondent-father's counsel also stipulated to the introduction of various court reports discussing respondent-father's failure to participate in mental-health services. By affirmatively approving the admission of this evidence, counsel waived any claim of error related to the substance of this evidence. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000). To the extent any in-court testimony concerning respondent-father's mental-health status or lack of participation in counseling could be considered inadmissible hearsay, because it was cumulative of the information in the unchallenged reports, its introduction was harmless. See *People v Gursky*, 486 Mich 596, 620-621; 786 NW2d 579 (2010).

Respondent-father suggests that any stipulations at the review hearings should not apply to the termination hearing under the circumstances of this case, where "new circumstances" were at issue. However, the legally admissible evidence standard applies only to evidence intended to establish one or more circumstances new or different from the circumstances that led the court to take jurisdiction. Thus, it does not apply to evidence intended to establish a basis for termination under § 19b(3)(c)(*i*), which is concerned with a respondent's failure to rectify the conditions that led to the adjudication. In light of our determination that there was clear and convincing evidence to terminate respondent-father's parental rights under § 19b(3)(c)(*i*), and because only one statutory ground for termination is necessary, respondent-father cannot demonstrate that the trial court's failure to hold separate hearings, or its failure to consider only legally admissible evidence, resulted in an outcome-determinative plain error. *In re TK*, 306 Mich App at 703.

Affirmed.


/s/ Joel P. Hoekstra
/s/ Patrick M. Meter
/s/ Kirsten Frank Kelly