*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* GIBSON, Minors.

UNPUBLISHED
November 22, 2022

No. 360481
Livingston Circuit Court
Family Division
LC No. 20-016185-NA

Before: M. J. KELLY, P.J., and SHAPIRO and PATEL, JJ.

PER CURIAM.

Respondent-father appeals by right the trial court's order terminating his parental rights to the minor children, AG and EG, under MCL 712A.19b(3)(b)(*i*) (parent's act caused physical injury or physical or sexual abuse to child or sibling), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood of harm if returned to parent). For the reasons stated in this opinion, we affirm.

## I. BACKGROUND

In November 2020, the Department of Health and Human Services (DHHS) filed a petition to terminate respondent's parental rights to AG and EG after their half-sibling, ARW, disclosed to Michigan Children's Protective Services that respondent had sexually abused her.[1] AG and EG were living with respondent at the time they were removed from his care. Respondent did not appear for the bench trial on the adjudication, at which ARW described being sexually penetrated by respondent's penis when she and her mother lived with respondent in Wisconsin years ago.

---

[1] This case began with a petition filed against AG and EG's mother in Livingston County relating to three other children, including ARW. DHHS then filed a petition against respondent in Muskegon, and the case was transferred to Livingston and consolidated with the prior Livingston petition. AG and EG's mother appealed by right the trial court's order of adjudication placing her five children, including AG and EG, under the trial court's jurisdiction. This Court affirmed the order of adjudication. *In re Wiseman/Gibson Minors*, unpublished per curiam opinion of the Court of Appeals, issued March 24, 2022 (Docket No. 357464).

ARW's grandmother testified that ARW disclosed the abuse to her in 2013. The grandmother had observed ARW walking "funny" and bloody mucous in ARW's stool before she made the disclosure. The police were informed and ARW was brought to a hospital for a sexual assault examination, but ultimately no charges were brought against respondent in Wisconsin.

The trial court also heard testimony from AG and EG's mother, who testified that respondent committed domestic violence against her while they lived together. In addition, evidence was presented that respondent had several notable incidents during parenting time,[2] including an incident in December 2020 during which respondent became extremely agitated, threw a set of crutches in EG's direction, and was arrested during his parenting-time visit by police after repeatedly disobeying commands. Respondent's parenting time was suspended after this incident and was not reinstated. The court also heard testimony from the DHHS investigator who authored the petitions. The investigator testified that when AG and EG were removed from respondent's care, they were not clean, their clothes were very small, and EG had no baby formula.

The trial court found by a preponderance of the evidence that one or more of the allegations in the petition were true and came within the provisions of MCL 712A.2b. At a later date, the case proceeded to the dispositional phase, where the court heard testimony related to the children's best interests. The court then found that there was clear and convincing evidence that respondent committed "criminal sexual conduct involving penetration" against ARW, such that aggravated circumstances existed allowing termination of parental rights at the initial disposition. The court further found that on the basis of an anticipatory abuse or neglect theory, the statutory grounds for termination under MCL 712A.19b(3)(b)(*i*), (g), and (j) were met, and that it was in AG's and EG's best interests to terminate respondent's parental rights.

## II. AGGRAVATED CIRCUMSTANCES

Respondent argues that he should have been provided with a case service plan before termination of his parental rights. We disagree.

DHHS must make reasonable efforts to reunify the family, including the preparation of a case service plan, unless there are "aggravated circumstances." *In re Simonetta*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 357909); slip op at 3. Relevant to this case, MCL 722.638(1) provides that aggravated circumstances exist when a parent "has abused the child or a sibling of the child and the abuse included . . . [c]riminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate." MCL 722.638(1)(a)(*ii*).

In this case, the trial court found that there was clear and convincing evidence that respondent sexually penetrated AG and EG's half-sibling. Respondent does not expressly dispute this finding or that it constitutes aggravated circumstances under MCL 722.638(1)(a)(*ii*). Instead, he relies on *Stanley v Illinois*, 405 US 645; 92 S Ct 1208; 31 L Ed 2d 551 (1972), to argue that his parental rights were impermissibly terminated based on a presumption of parental unfitness.

---

[2] Respondent was afforded parenting time only with EG because his paternity of AG was not yet established at the time.

In *Stanley*, the United States Supreme Court found unconstitutional an Illinois statute that made children of unmarried fathers wards of the State upon the death of the mother. This statute "empower[ed] state officials to circumvent neglect proceedings on the theory that an unwed father is not a 'parent' whose existing relationship with his children must be considered." *Id*. at 649-650. "By use of this proceeding, the State, on showing that the father was not married to the mother, need not prove unfitness in fact, because it is presumed at law." *Id*. at 650. The Supreme Court held that due process entitled the unmarried father "to a hearing on his fitness as a parent before his children were taken from him and that, by denying him a hearing and extending it to all other parents whose custody of their children is challenged, the State denied Stanley the equal protection of the laws guaranteed by the Fourteenth Amendment." *Id*. at 649.

*Stanley* is materially distinguishable from the instant case. First, respondent was not presumed to be an unfit parent solely on the basis of the prior abuse. Rather, an adjudication hearing was held where substantial *current* evidence of respondent's parental fitness was also presented. See *In re Kanjia*, 308 Mich App 660, 672; 866 NW2d 862 (2014) ("[T]he adjudication trial is the only fact-finding phase regarding parental fitness . . . .") (quotation marks and citation omitted). Second, the existence of aggravated circumstances does not require a trial court to terminate a respondent's parental rights. While aggravated circumstances relieve DHHS of its duty to provide reunification efforts, at least one statutory ground for termination must still be proven by clear and convincing evidence. See MCR 3.977(E). Accordingly, the statutory scheme related to aggravated circumstances does not terminate parental rights based on a presumption. Rather, the trial court must determine based on the evidence presented in each case whether termination is warranted under one or more statutory grounds.

In this case, respondent's parental rights were terminated under the following statutory grounds:

> (b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

> (*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

> \* \* \*

> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

> \* \* \*

> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent. [MCL 712A.19b(3).]

Respondent argues that, given the lack of a case service plan, there was no evidence of what might be reasonably expected of him in the future. Respondent does not contend, however, that the trial court erred by finding clear and convincing evidence to terminate his parental rights. In doing so, the trial court relied on the doctrine of anticipatory neglect, which "provides that how a parent treats one child is probative of how that parent may treat other children." *In re Mota*, 334 Mich App 300; 964 NW2d 881 (2020). This doctrine is applicable even when the respondent is not biologically related to the child he previously abused. See *id*. at 322-323.[3]

Respondent's brief can also be read to suggest that there is a de facto presumption that a parent's rights will be terminated once the trial court finds that the parent sexually abused a different child. While that may be true in most cases, the statutory scheme simply does not compel that result. Instead, the trial court must consider the individual circumstances of each case in determining whether "there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home," MCL 712A.19b(3)(b)(*i*), or that other statutory grounds for termination exist. And although the trial court here appeared to rely solely on the prior abuse in making that determination, there was other substantial evidence presented at the adjudication that supported termination of respondent's parental rights under the statutory grounds relied on by the trial court.

In sum, there was sufficient evidence for the trial court to find that aggravated circumstances existed under MCL 722.638(1)(a)(*ii*), and therefore reasonable efforts by DHHS to reunify respondent with the children and provide respondent with services were not required. Respondent's parental rights were not terminated pursuant to a statutory presumption such that this case falls within the ambit of *Stanley* and its progeny.

## III. BEST INTERESTS

Respondent also argues that the trial court erred by finding that it was in AG's and EG's best interests to terminate his parental rights. We again disagree.[4]

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). The petitioner must prove by a preponderance of the evidence that termination of parental rights is in the child's best interests. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). In determining the child's best interests, "the court should consider a wide variety of factors that may include the child's bond to the parent,

---

[3] In *In re Mota*, we noted that "[a]lthough there was only evidence of one act of sexual abuse, it was an especially egregious violation of a child who had looked to respondent for care and protection as a father figure." *In re Mota*, 334 Mich App at 322. The same can be said in this case.

[4] We review for clear error a trial court's decision that termination is in a child's best interest. *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009). A finding is clearly erroneous if this Court "is left with the definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citations omitted).

the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014 (quotation marks and citations omitted). The court may also consider a parent's history of domestic violence, the parent's visitation history with child, and the child's well-being while in care. *Id*. at 714.

In determining that it was in the children's best interests to terminate respondent's parental rights, the trial court considered AG's and EG's lack of bond with respondent; respondent's parenting ability and his inappropriate behavior during parenting visits; the children's young ages; that they were doing well in foster care and were not well cared for before coming into care; that the children needed permanency, stability, and finality; that respondent sexually abused the children's half-sibling; and respondent's history of domestic violence.

Respondent argues that the trial court erred by giving greater weight to the caseworker's testimony than his parent's testimony because his parents had observed respondent interact with the children for a much longer period of time. Respondent's parents testified that he was an appropriate and involved parent. Examples included respondent providing the children with food and clothing and engaging in activities with them. But there was contrary evidence that AG and EG were dirty and their clothes did not fit when they were removed from respondent's care, and that they had unaddressed medical and dental needs. These issues have since been addressed by the foster family. Given that we defer to "the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it," *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011), the trial court's reliance on the caseworker's testimony over respondent's parents' testimony was not in error.

Respondent also challenges the trial court's conclusion that respondent was not bonded with the children. But the court's finding on this matter was not clearly erroneous. During his parenting time, respondent repeatedly spoke with caseworkers instead of engaging with EG, who was approximately one year old at the time. Nor did respondent bring any toys or activities to engage EG during parenting time. He also threw a set of crutches in her direction when he became aggravated and was arrested during parenting time, and he refused to perform parental tasks such as changing EG's diaper. Perhaps most significantly, the trial court noted that since the parenting-time incident that resulted in his arrest, respondent absconded from the family court proceedings and essentially "abandoned the children."

In conclusion, the trial court did not err by finding that it was in the children's best interests to terminate respondent's parental rights.

Affirmed.

/s/ Michael J. Kelly
/s/ Douglas B. Shapiro
/s/ Sima G. Patel