*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* K M TEMPLE-FISCHER, Minor.

UNPUBLISHED
December 14, 2023

No. 366405
Cheboygan Circuit Court
Family Division
LC No. 14-008425-NA

Before: REDFORD, P.J., and SHAPIRO and YATES, JJ.

PER CURIAM.

Respondent-mother appeals of right an order of adjudication that permitted the trial court to exercise jurisdiction over her minor child, KMTF, under MCL 712A.2(b)(1) and (2). On appeal, respondent-mother contends that the trial court erred in exercising jurisdiction because respondent-mother provided for a proper custodian and an appropriate custodial environment by delegating to a relative authority over KMTF through a power of attorney. Also, respondent-mother complains that the trial court was persuaded by irrelevant testimony concerning the home environment of the child before the petition was filed and that no other evidence was presented to support jurisdiction. Despite respondent-mother's efforts to place KMTF with her maternal grandmother, we conclude the trial court properly exercised jurisdiction over KMTF under MCL 712A.2(b)(2), so we affirm.

## I. FACTUAL BACKGROUND

On March 11, 2022, while respondent-mother was on probation for criminal offenses, she gave birth to KMTF. At that time, respondent-mother was taking part in a recovery court program. On June 28, 2022, the police called recovery court administrator Nicole Pawlowski to respondent-mother's home following a domestic dispute. Respondent-mother and KMTF were by themselves in the home, and Pawlowski was not sure that KMTF had been present during the domestic dispute. Pawlowski noted that "the house was a mess" and KMTF was undressed except for an "extremely wet" diaper. Pawlowski administered a drug test that revealed respondent-mother was positive for methamphetamine. Respondent-mother denied ever using methamphetamine while KMTF was in the house, insisting that she only used methamphetamine when KMTF was with her grandparents.

On October 13, 2022, respondent-mother admitted she had violated the recovery program rules by using methamphetamine, suboxone, and THC. On October 19, 2022, she was arrested at the courthouse and jailed for a probation violation. Respondent-mother had KMTF with her when

she was arrested, so she called her mother, Dixie Derhammer, to get KMTF. Children's Protective Services followed up on the complaint and noted that KMTF's legal father, Joshua Temple, was physically abusive to respondent-mother and was using methamphetamine.

On November 2, 2022, while respondent-mother was in jail, she found out that because she had violated the recovery court program's rules, she was ineligible to go to a rehabilitation facility. After receiving that news, respondent-mother signed a parental power of attorney indicating that KMTF should be kept in Derhammer's care while respondent-mother was incarcerated. Less than three weeks later, respondent-mother was sentenced to serve 4 to 40 years in prison with an earliest release date from prison of June 7, 2026.

On February 6, 2023, the Department of Health and Human Services (DHHS) submitted a petition asking the court to take jurisdiction over KMTF. The petition alleged that "Joshua Temple is not the biological father to [KMTF], but he is the legal father established through an Affidavit of Parentage." The petition explained that KMTF's "family is considered an 'in-tact,' family, but that if they are no longer intact the custody [of KMTF] would default to 50/50 legal and physical" custody and a "regular parenting time schedule." The petition described a chaotic situation in the week that led up to the filing of the petition, with KMTF being shuttled between the residences of Temple and Derhammer.

At a hearing on February 8, 2023, the trial court commented that "[y]esterday the child was removed" from Derhammer's "house and placed with Brenda Temple," who is the father's cousin. At the request of KMTF's father, the trial court then elected to place KMTF with Colleen Temple, who is the father's mother, as soon as a home study could be completed. One week after that, on February 15, 2023, respondent-mother waived her right to a preliminary examination and the trial court indicated that KMTF was "currently placed with [respondent-mother]'s licensed relative in Rudyard." At a pretrial conference on March 8, 2023, KMTF's father entered a plea to an amended petition alleging that he "used methamphetamine while KMTF was present in the home rendering the home an unfit environment for [KMTF] to live." In contrast, respondent-mother decided at a separate pretrial conference on March 29, 2023, to go forward with an adjudication bench trial.

The adjudication trial took place on May 2, 2023. During that hearing, respondent-mother testified that she was incarcerated at the Huron Valley Correctional Facility, where she was serving a sentence imposed in November 2022 that would keep her imprisoned until at least June 7, 2026. Respondent-mother acknowledged she had used methamphetamine on October 12, 2022, and that had resulted in adverse consequences including jailing and imprisonment. In addition, respondent-mother conceded that she had not provided any support—financial, emotional, or any other type— to KMTF since she was taken to jail on October 19, 2022. The trial court also heard from DHHS worker Danielle Mutschler, who testified that she "was assigned a complaint for the investigation" of respondent-mother "on October 24 of last year[,]" i.e., 2022, which was more than a week before respondent-mother signed the parental power of attorney on November 2, 2022. Mutschler stated that she talked to respondent-mother on "approximately October 31st, when she was in Cheboygan County Jail" and told respondent-mother about the allegations. Consequently, respondent-mother knew that the investigation was in progress when she signed the parental power of attorney. Also, Mutschler explained that she first saw KMTF "at the maternal grandmother's house" in Levering "around October 25th" 2022, but "there was not a power of attorney in place on the day that [she]

saw" KMTF there. Finally, Mutschler made clear that the DHHS did not recognize that power of attorney as valid because KMTF's father "had 50 percent custody" of KMTF.

At the end of the adjudication hearing, the trial court rendered its findings and conclusions from the bench. The trial court referred in passing to the domestic dispute, but then explained that "the bigger issue . . . is the methamphetamine use and the subsequent incarceration that stemmed from it." The trial court noted respondent-mother's testimony that KMTF was almost always in her care and Pawlowski's testimony that respondent-mother's drug use was significant enough and frequent enough to warrant termination from the recovery court program. The trial court reasoned that respondent-mother was incarcerated, so she was not physically able to provide care or support for KMTF. Turning to the power of attorney that respondent-mother signed on November 2, 2022, the trial court observed that that document "wasn't executed until after the investigation had begun by" the DHHS "and after she was incarcerated for . . . a couple weeks." Moreover, the trial court stated that the "second problem with the power of attorney is that [KMTF's father] was still in the picture" and "parent A can't just draft a power of attorney that's going to trump" the "custody that exists for parent B." Thus, the trial court took jurisdiction over KMTF, citing MCL 712A.2(b)(1) and (2). After the disposition hearing on May 17, 2023, respondent-mother appealed.

## II. LEGAL ANALYSIS

Respondent-mother faults the trial court for exercising jurisdiction over KMTF under MCL 712A.2(b)(1) and (2). In order to exercise "jurisdiction over a child, the trial court must find that the petitioner has proved by a preponderance of the evidence one or more statutory grounds for the taking of jurisdiction alleged in the petition." *In re Kanjia*, 308 Mich App 660, 664; 866 NW2d 862 (2014). "We review the trial court's decision to exercise jurisdiction for clear error in light of the court's findings of fact." *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). The trial court conducted an adjudication hearing on May 2, 2023. At an adjudication trial, " 'the petitioner has the burden of proving by a preponderance of the evidence one or more of the statutory grounds for jurisdiction alleged in the petition.' " *In re Ferranti*, 504 Mich 1, 15; 934 NW2d 610 (2019). Here, the petition alleged two grounds for the exercise of jurisdiction, asking the trial court to take jurisdiction under MCL 712A.2(b)(1) and (2). The trial court relied on both of those jurisdictional bases, so we shall consider each one in turn.

## A. JURISDICTION UNDER 712A.2(B)(1)

According to MCL 712A.2(b)(1), a trial court may exercise jurisdiction over a child "who is without proper custody or guardianship." But MCL 712A.2(b)(1)(C) makes clear that the term " '[w]ithout proper custody or guardianship' does not mean the parent has placed the juvenile with another person who is legally responsible for the care and maintenance of the juvenile and who is able to and does provide the juvenile with proper care and maintenance." Respondent-mother was taken to jail on October 19, 2022, and to prison on November 22, 2022, to serve 4 to 40 years with an earliest release date of June 7, 2026. Despite her long-term imprisonment, respondent-mother contends KMTF did not lack "proper custody or guardianship" because respondent-mother signed a parental power of attorney form on November 2, 2022, that delegated her "parental powers" to her mother, Dixie Derhammer, "pursuant to MCL Section 700.5103[.]" The trial court rejected the contention that that power of attorney provided "proper custody or guardianship" for KMTF, as contemplated by MCL 712A.2(b)(1).

By virtue of MCL 700.5103(1), a parent may use "a properly executed power of attorney" to "delegate to another person, for a period not exceeding 180 days, any of the parent's . . . powers regarding care, custody, or property of [a] minor child[.]" But the 180-day limit on the efficacy of a parental power of attorney, which is reinforced by a rule in MCL 700.5103(2) against delegating "powers under this section regarding care and custody of the parent's minor child for longer than 180 days for the purpose of permanently transferring custody of the child[,]" ensures that a parental power of attorney can offer a solution in the face of a short-term jail sentence, but not a long-term prison sentence. Here, the language of the parental power of attorney signed by respondent-mother on November 2, 2022, limited its application to a period of 180 days. That 180-day period expired prior to the adjudication on May 2, 2023, so the parental power of attorney did not afford KMTF the benefit of "proper custody or guardianship" when the trial court took jurisdiction over her on May 2, 2023.

Although the parental power of attorney did not establish "proper custody or guardianship" as contemplated by MCL 712A.2(b)(1), "this Court has observed that 'if a parent places a child in the care of a relative whose home is not unfit, then the "without proper custody or guardianship" language is not satisfied.' " *In re Dixon (On Reconsideration)*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 363388); slip op at 9. But "[t]he converse is equally true." *Id*. Therefore, if "a parent places a child in the care of a relative whose home *is* unfit, the parent has not provided proper care and custody." *Id*. "This is why MCR 3.965(C)(5) mandates that even when a child is placed with a relative, the [trial] court must order the completion of a home study within 30 days and may order the completion of a criminal record and central registry check within a week." *Id*.

Here, when respondent-mother was arrested and taken to jail on October 19, 2022, she had Derhammer pick up KMTF at the courthouse. Under Michigan law, "[a]n incarcerated parent *can* exercise the constitutional right to direct the care of his or her children while incarcerated" and can "choose who will care for [the] children while he [or she] is imprisoned." *In re Sanders*, 495 Mich 394, 420-421; 852 NW2d 524 (2014). Respondent-mother did precisely that in asking Derhammer to pick up KMTF and care for her during respondent-mother's incarceration. Although petitioner argues that KMTF was "without proper custody or guardianship" because Derhammer's home was unfit because of Derhammer's involvement in maintaining a drug house in 2019, the trial court did not make any finding to that effect. Thus, the trial court did not exercise jurisdiction over KMTF on that basis, so we cannot affirm the exercise of jurisdiction under MCL 712A.2(b)(1).

B. JURISDICTION UNDER MCL 712A.2(B)(2)

Under MCL 712A.2(b)(2), a trial court may exercise jurisdiction over a child whose "home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in." The trial court explained that KMTF's home or environment when she was in respondent-mother's care exposed KMTF to "both parents . . . actively using methamphetamine." And after respondent-mother was arrested and jailed on October 19, 2022, that aspect of KMTF's home or environment did not change. Respondent-mother asserts KMTF's exposure to illegal drugs ended when KMTF was transferred to Derhammer on October 19, 2022, but the evidence from the adjudication hearing paints an entirely different picture. Specifically, KMTF's home and her environment continued to be drug-infested and chaotic in the week before the filing of the petition on February 6, 2023.

-4-

To be sure, jurisdiction under MCL 712A.2(b)(2) must be based on the situation at the time the petition is filed. *In re Long*, 326 Mich App 455, 459-462; 927 NW2d 724 (2018). Accordingly, respondent-mother's use of methamphetamine in October 2022 cannot support jurisdiction under MCL 712A.2(b)(2) based on the petition filed on February 6, 2023. But the record reveals that the "home or environment" of KMTF was rife with criminality. KMTF's father admitted that he used methamphetamine while KMTF was present in his home just before the petition was filed and that his drug use made KMTF's home "an unfit place for KMTF to live in[,]" as contemplated by MCL 712A.2(b)(2). Respondent-mother points out that that condition was not her fault because she was incarcerated at that time, but "[t]he juvenile code is intended to protect children from unfit homes rather than to punish their parents." *In re Brock*, 442 Mich 101, 108; 499 NW2d 752 (1993). Thus, what matters here is the "home or environment" of KMTF when the petition was filed, as opposed to whether respondent-mother bore responsibility for the condition of the home or environment at that time. Because the trial court did not commit clear error in finding that, in early February 2023, KMTF's "home or environment," by reason of criminality "on the part of a parent" was "an unfit place" for KMTF to live, we must affirm the trial court's exercise of jurisdiction over KMTF under MCL 712A.2(b)(2).

Affirmed.

/s/ James Robert Redford
/s/ Douglas B. Shapiro
/s/ Christopher P. Yates