*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re X. SORRELLS, Minor.

UNPUBLISHED
May 7, 2019

No. 344129
Ingham Circuit Court
Family Division
LC No. 16-001563-NA

Before: CAMERON, P.J., and BECKERING and RONAYNE KRAUSE, JJ.

PER CURIAM.

Respondent father appeals as of right an order terminating his parental rights to his child, XS, under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication not rectified), MCL 712A.19b(3)(g) (failure to provide proper care or custody), and MCL 712A.19b(3)(j) (reasonable likelihood of harm to child in the future). Respondent's only contention on appeal is that the trial court violated his right to due process by effectively depriving him of an adjudication under the circumstances presented. We agree, and thus, we reverse and remand for further proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The trial court became involved in this matter because of the mother's substance abuse. Children's Protective Services (CPS) had received a complaint alleging that the child's mother had tested positive for cocaine throughout her pregnancy, and the newborn's meconium tested positive for the drug. Petitioner filed a removal petition against the mother, naming respondent, who was in jail at the time, as an alleged father. The court authorized the removal petition and placed XS with foster parents on November 17, 2016.

According to the record, respondent was released from jail in late April 2017, and he appeared at a May 9, 2017 dispositional review hearing regarding the mother. At the hearing, respondent indicated that DNA test results identified him as XS's father, and that he wanted to execute an affidavit of parentage immediately. This was not possible, however, because the mother's signature was necessary, but her whereabouts were unknown. The hearing referee advised petitioner and respondent that they had 14 days to undertake the necessary efforts to make respondent the legal father. The referee further informed respondent, "when you appear in court again if you feel the need to be represented by an attorney, which I encourage you to do,

you make the request of the Court at the next court hearing and the Court will appoint you an attorney. So first you make yourself the legal father, second you appear in court and ask for the appointment of an attorney." Respondent indicated at some point during the hearing, "I'll be here in two weeks to sign my affidavit and I plan on getting my [child] . . . and moving into a house."

On July 14, 2017, after respondent had established himself as the child's legal father, petitioner filed a *Sanders* petition.[1] The petition alleged that respondent was an unfit parent due to lack of sufficient income, unemployment, unresolved substance abuse issues, emotional stability concerns, and an inability to provide a safe and stable environment for XS. The trial court authorized the petition and appointed counsel for respondent. On July 27, 2017, the trial court held a pre-adjudication hearing; respondent's counsel was present, but respondent was not.

Respondent had no further contact with petitioner until September 2017, when he informed petitioner that he had been in jail in another county "for a first-degree home invasion" since July 2017. He received a copy of the petition and expressed interest in cooperating with petitioner and participating in recommended services. However, he refused to give petitioner his telephone number and stated that he was using someone else's telephone to call petitioner, that he did not have a home, and that he was staying at "Volunteers of America."

At the request of respondent's counsel, the trial court scheduled a bench trial for respondent's adjudication, setting the date for October 2, 2017. At the appointed date and time, respondent's counsel was present, but respondent was not. At the start of the trial, respondent's counsel moved to withdraw on grounds that he had had no contact with respondent and, because he did not know what respondent wanted, he believed that continuing to represent him would constitute a violation of Michigan's Rules of Professional Conduct. As will be explained below, petitioner, petitioner's attorney, and the child's lawyer guardian ad litem opposed counsel's motion. Nevertheless, the trial court granted counsel's motion to withdraw, and then proceeded with the adjudication trial.

The foster-care caseworker testified that respondent had been in and out of jail since the child's birth, had an extensive criminal history and a history of substance abuse, had visited his child only twice since June 2017, despite being afforded parenting time thrice weekly, had not bonded with the child, and was very difficult to contact. With respect to the latter, the caseworker testified that respondent had provided a mailing address, but no reliable phone number, that he showed up randomly at the agency, and that he called once a month or so to get updates about the case. Thereafter, the trial court ruled that petitioner had presented sufficient evidence to prove that respondent's home was an unfit place for a child to live based on respondent's criminality. Subsequently, the trial court entered a dispositional order that, among other things, required respondent to participate in a host of services, to submit to a substance

---

[1] *In re Sanders*, 495 Mich 394, 413-420; 852 NW2d 254 (2014) (requiring separate adjudications for each parent).

abuse assessment, and to undergo screenings for alcohol and controlled substances as deemed necessary by the foster-care caseworker.

In its periodic updates to the court regarding respondent's progress, petitioner continued to stress difficulties in communicating with respondent. The foster-care agency could not readily contact respondent and respondent did not regularly contact the foster-care agency. Telephone issues aside, in one update, petitioner noted:

> [Respondent] appeared limited in his functioning, although the agency does not have documentation supporting this. The interaction that the agency has had with [respondent] had to be presented in a very clear and concise manner. [Respondent] often is told something multiple times, and it seems that he is unable to fully process what is being asked of him.

Respondent contacted the foster-care agency on January 16, 2018. He said that he could not remember who his caseworker was and did not have a working telephone, and he confirmed the mailing address on file. He also indicated that he had not been in contact with the agency because, in the caseworker's words, he had been "busy working things out and straightening up his life." Six days later, respondent met face-to-face with the caseworker. According to her account, she told respondent about the adjudication, informed him of the services the trial court had ordered, and opined that he had been absent from the proceedings so long that he risked termination of his parental rights.

The next event of note occurred on March 29, 2018, when the trial court held a permanency planning hearing, at which respondent was present. The court realized that respondent was without counsel and, upon respondent's request, appointed an attorney who was present in the building to represent him. Petitioner then argued that the goal in the matter should be changed from reunification to adoption. The trial court subsequently found adoption to be in the child's best interests and ordered petitioner to file a petition to terminate respondent's parental rights. Following a termination hearing on May 7, 2018, the trial court found the existence of statutory grounds to terminate respondent's parental rights and that termination would be in the child's best interests, and entered a corresponding order. This appeal followed.

## II. ANALYSIS

Respondent contends that the trial court violated his right to procedural due process by allowing his attorney to withdraw at the start of the adjudication hearing and then proceeding with adjudication and initial disposition in respondent's absence and with no lawyer representing him.

The Michigan Supreme Court has recognized that "[p]arents have a significant interest in the companionship, care, custody, and management of their children, and the interest is an element of liberty protected by due process." *In re Sanders*, 495 Mich 394, 409; 852 NW2d 524 (2014), citing *In re JK*, 468 Mich 202, 210; 661 NW2d 216 (2003), citing *In re Brock*, 442 Mich 101, 109, 499 NW2d 752 (1993). "Whether child protective proceedings complied with a parent's right to procedural due process presents a question of constitutional law, which we

review de novo." *In re Sanders*, 495 Mich at 403-404. Because respondent did not argue below that the trial court violated his right to procedural due process, the issue is unpreserved.

"We review unpreserved claims of constitutional error under a plain-error analysis." *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011). " 'To avoid forfeiture under the plain error, three requirements must be met: (1) the error must have occurred, (2) the error was plain, i.e., clear or obvious, (3) and the plain error affected substantial rights.' " *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2000), quoting *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "When plain error has occurred, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant *or* when an error seriously affecte[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008), quoting *In re Osborne (On Remand, After Remand)*, 237 Mich App 597, 606; 603 NW2d 824 (1999) (internal quotation marks and citations omitted; alteration in the original), citing *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

## A. ADJUDICATION[2]

"In Michigan, child protective proceedings comprise two phases: the adjudicative phase and the dispositional phase." *In re Kanjia*, 308 Mich App 660, 663; 866 NW2d 862 (2014), quoting *Sanders*, 495 Mich at 404. "Child protective proceedings are initiated by the state's filing a petition in the family division of the circuit court requesting the court to take jurisdiction over a child." *Id*. at 664. "A respondent-parent may admit the allegations in the petition, plead no contest to the allegations, or demand a trial." *Id*. "When the petition contains allegations of abuse or neglect against a parent, MCL 712A.2(b)(1), and those allegations are proved by a plea or at the [adjudication] trial, the adjudicated parent is unfit." *Id*. at 663, quoting *Sanders*, 495 Mich at 405. "If the court takes jurisdiction over the child, the proceedings enter the dispositional phase[.]" *Kanjia*, 308 Mich App at 664. During this phase, "the trial court has broad authority to effectuate orders aimed at protecting the welfare of the child, including ordering the parent to comply with the [DHHS] case service plan and ordering the [DHHS] to file a petition for the termination of parental rights if progress is not being made." *Id*. The "adjudicative phase is only the first step in child protective proceedings, [but] it is of crucial importance because the procedures used in adjudicative hearings protect the parents from the risk of erroneous deprivation of their parental rights." *Id*. at 663, quoting *Sanders*, 495 Mich at 405-406 (quotation marks and citations omitted).

The Michigan Supreme Court has distinguished between adjudicated and unadjudicated parents and held that "due process protections prevent a trial court from entering dispositional

---

[2] We note that petitioner agrees that respondent's challenge to the trial court's adjudication is not a collateral attack on the trial court's order of termination. See *In re Kanjia*, 308 Mich App 660, 670; 866 NW2d 862 (2014) (holding that a "*Sanders* challenge, raised for the first time on direct appeal from an order of termination, does not constitute a collateral attack on jurisdiction, but rather a direct attack on the trial court's exercise of its dispositional authority.").

orders—including orders of termination—against an unadjudicated respondent." *Kanjia*, 308 Mich App at 670, citing *Sanders*, 495 Mich at 422. In addition, this Court has recognized that a parent has a right to counsel in parental rights termination cases, including the right to appointed counsel. See *In re Williams*, 286 Mich App 253, 275-276; 779 NW2d 286 (2009), citing *In re Powers Minors*, 244 Mich App 111, 121; 624 NW2d 472 (2000), and *In re Cobb*, 130 Mich App 598, 600; 344 NW2d 12 (1983). Further, we have found a violation of due process when, in the absence of the responding parent and counsel for the responding parent, a trial court allows a petitioner to proceed unopposed in an adjudication hearing. *In re Collier*, 314 Mich App 558, 571-572; 887 NW2d 431 (2016).

## B. RESPONDENT WAS EFFECTIVELY DENIED AN ADJUDICATION

The record indicates that respondent knew that the trial court had appointed counsel to represent him. As already indicated, petitioner filed a *Sanders* petition on July 14, 2017. Subsequent to an inquiry on the petition, Ingham County Family Division referee Roy Porter authorized the petition and appointed an attorney for respondent; the trial court affirmed both actions in an order following the preliminary inquiry. This order also scheduled a pretrial hearing on respondent's adjudication for July 27, 2017, and noted the appointment of attorney Rodger Montgomery for respondent. A July 17, 2017 entry in the register of actions records proof of service of the petition and the order following the preliminary inquiry. Further, when respondent's appointed counsel appeared at the July 27, 2017 pretrial hearing, the trial court observed that the record suggested that respondent knew about the pretrial hearing because service on him had been personal. Thus, record evidence indicates that, not only did the trial court appoint counsel for respondent, but also that respondent was informed of this appointment by personal service of the petition and the order following the preliminary inquiry.

When respondent's counsel moved at the outset of the adjudication trial to withdraw as counsel, contending that he could not competently represent respondent because he had had no contact with him and did not know his wishes, petitioner, petitioner's attorney, and the child's lawyer guardian ad litem opposed the motion. Asked its opinion, petitioner opined, "a lot of times the parents do not appear and we proceed without them. And from talking with [the case manager], he was aware that he had an attorney so I don't believe it would be proper to excuse the attorney here for this jurisdictional trial." Petitioner's attorney observed that if an attorney is going to withdraw, there should be a motion which the parent would receive notice of, and because respondent did not have notice of his attorney's motion, there was no verification that respondent knew he would not be represented by counsel at the adjudication bench trial. Similarly, the child's lawyer guardian ad litem opined that respondent "is in a position where he may be of the opinion that he needn't appear simply because he has counsel present," and, for this reason, asked the trial court to deny counsel's motion to withdraw. Notwithstanding these arguments, the trial court granted respondent's motion to withdraw, reasoning that respondents have a right to an attorney, but also the responsibility to participate in the proceedings, and concluding that if respondent "fervently disagreed" with the petition, he would have either tracked down his counsel or been present.

Respondent contends that the trial court erred in granting counsel's motion. The abuse of discretion standard recognizes that, in some circumstances, "there will be more than one

reasonable and principled outcome[,]" and that a trial court does not abuse its discretion so long as it chooses one of these reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). We cannot say that the trial court necessarily abused its discretion by granting counsel's motion to withdraw. On one hand, a constant theme throughout the record is petitioner's difficulty in contacting respondent. Respondent provided an address at which he received mail, but no phone number where petitioner could reliably reach him, and his contact with petitioner was sporadic. In addition, respondent's periodic incarcerations, noticeable cognitive limitations, and unstable lifestyle, presented challenges to his involvement in the proceedings and in a case services plan. On the other hand, there is no record evidence that counsel made any independent efforts to contact respondent.[3] Moreover, respondent expressed an interest in reunification with the child, telling the court that he planned to get his daughter and move into a house, and telling petitioner that he wanted to cooperate and to participate in the recommended services.

Regardless of whether the trial court abused its discretion by granting counsel's motion to withdraw, the trial court committed clear error by pushing forward with the adjudication hearing in the absence of respondent and of counsel for respondent.[4] *In re Collier*, 314 Mich App 558, 571-572; 887 NW2d 431 (2016). Having counsel appointed for him on July 14, 2017, and being informed of the same on July 17, 2017, "respondent was entitled to assume that counsel would represent him at the adjudication hearing . . . ." *Id*. at 571. This is not to excuse respondent's lack of participation in these child protective proceedings. Rather, it is to affirm the well-established and significant liberty interest parents have in the "companionship, care, custody, and management of their children," and the related importance of the adjudicative phase. *Sanders*, 495 Mich at 409. The "procedures used in adjudicative hearings protect the parents from the risk of erroneous deprivation of their parental rights." *Id*. at 406. For example, in adjudicative hearings, the rules of evidence generally apply, and the petitioner must prove by a preponderance of the evidence one or more of the statutory grounds for jurisdiction alleged in the petition." *Id*. at 405. In the present case, because the trial court immediately forged ahead after granting counsel's motion to withdraw, petitioner was able to present its case against respondent completely unchallenged. This amounted to an ex parte proceeding that, without notification, denied respondent the assistance of counsel that he had been informed he would have. *In re Williams*, 286 Mich App at 275-276.

---

[3] Asked if he had attempted to contact respondent, his counsel replied, "what I understand in that regard and this is from discussions I've had with the caseworker is that he cannot really be contacted."

[4] The trial court could either have declined to grant counsel's motion to withdraw until after the adjudication proceeding, advising respondent's counsel to proceed under the assumption that respondent wished to preserve his parental rights, as respondent had previously expressed on the record, or granted the motion and adjourned the adjudication hearing for just a couple of weeks, and in the interim advised respondent that his counsel had withdrawn.

In addition, we find reversal warranted because the trial court's action in proceeding with the adjudicative hearing without informing respondent that he no longer had the assistance of his appointed attorney "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings[.]" *In re Osborne*, 237 Mich App at 606 (quotation marks and citation omitted). Our Supreme Court, as well as this Court, has stressed the importance of the adjudicative phase of a child protective proceeding. The adjudicative phase of a child protective proceeding "is of critical importance because the procedures used in adjudicative hearings protect the parents from the risk of erroneous deprivation of their parental rights." *In re Kanjia*, 308 Mich App at 663, quoting *Sanders*, 495 Mich at 405-406 (quotation marks and citations omitted). "A parent's fundamental right to direct the care, custody, and control of his or her child free from government interference cannot be overstated."[5] *Sanders*, 495 Mich at 415. "Parents have a significant interest in the companionship, care, custody, and management of their children, and the interest is an element of liberty protected by due process." *In re JK*, 468 Mich 202, 210; 661 NW2d 216 (2003), citing *Brock*, 442 Mich at 109. The adjudicative phase culminates in an adjudicative hearing, and once a parent is adjudicated as unfit, the proceeding enters into a dispositional phase. This phase does not serve the same constitutional purpose as the adjudicative phase. *Id*. at 415. For example, although during the adjudicative phase, " 'the State may not assume that a child and his [or her] parent are adversaries[,]' " once a parent is adjudicated as unfit, the court may " 'assume . . . that the interests of the child and the natural parents do diverge.' " *Sanders*, 495 Mich at 415, at n 11, quoting *Santosky v Kramer*, 455 US 745, 760; 102 S Ct 1388, 1398; 71 L Ed 2d 599 (1982). Errors in the adjudicative phase cannot be overcome in the dispositional phase.[6] *Id*. at 418-420.

We understand that the trial court was not required to *sua sponte* appoint counsel for respondent, see MCR 3.915(B)(1)(b)(i), but we herald the court's decision to do so in order to protect respondent's constitutional rights, especially knowing he had appeared and expressed a clear interest in parenting his child and also appeared to have cognitive limitations. However, for the trial court to continue with the adjudicative hearing after allowing the appointed attorney

---

[5] Of course, this right is not absolute; "the state has a legitimate interest in protecting the moral, emotional, mental, and physical welfare of the minor and in some instances, neglectful parents may be separated from their children." *Sanders*, 495 Mich at 409-410 (quotation marks and citation omitted).

[6] Although it was dealing with the complete lack of an adjudication for the parent at issue in *Sanders*, the Supreme Court rejected the DHS's argument that unadjudicated parents may have the opportunity to have their parental rights restored during the dispositional phase if they have complied with their case service plans or court orders during the dispositional phase. *Id*. at 419. The Supreme Court commented that this "puts the plow before the mule. The possibility of a fix at the back end is not sufficient to justify the lack of process at the front end." *Id*. at 420. Concluding that the "Constitution demands more," the Supreme Court quoted *Stanley v Illinois*, 405 US 645, 647; 92 S Ct 1208; 31 L Ed2d 551 (1972) for the proposition that the "Court has not . . . embraced the general proposition that a wrong may be done if it can be undone." *Id*.

to withdraw, without allowing time for notifying respondent that he could no longer rely on counsel to protect his interests at this critical stage, plainly violated respondent's right to due process and seriously affected the fairness, integrity, or public reputation of the judicial proceedings.[7]

---

[7] The dissent criticizes this majority opinion for failing to undertake a harmless-error analysis. We do not find harmless-error analysis applicable or necessary. As the dissent observes, unpreserved constitutional issues are reviewed for plain error affecting substantial rights. We applied that standard of review to the present case. In support of the position that a harmless-error analysis is applicable, the dissent appears to rely on *People v Lewis*, 501 Mich 1, 5-12; 903 NW2d 816 (2017), and *In re Hall*, 188 Mich App 217; 469 NW2d 56 (1991). Neither case is relevant to the case at bar. The pertinent issue in *Lewis* was whether the remedy for structural error, i.e., defendant's deprivation of counsel at a preliminary examination in a criminal proceeding, was automatic reversal or consideration of " 'whether the denial of counsel…was harmless error.' " *Lewis*, 501 Mich at 6. The *Lewis* Court relied on *Coleman v Alabama*, 399 US 1; 90 S Ct 1999; 26 L Ed 387 (1970) to hold that the deprivation of counsel at a preliminary examination was subject to harmless-error analysis. *Id*. at 12. There has been no claim of structural error in the case at bar, and our decision to reverse does not come about because we believe the trial court committed structural error that was not subject to harmless-error analysis.

*In re Hall* also does not compel us to apply a harmless-error analysis. The issue in *Hall* was whether the trial court erred by taking testimony at a review hearing in the absence of counsel for the respondent. The Court did not identify the applicable standard of review, but did not appear to have examined the issue as a due-process violation. Instead, the Court appears to have applied an abuse of discretion standard, and insinuated that even if the trial court had abused its discretion, the error was harmless. Moreover, we find the instant case to be distinguishable from *In re Hall*, 188 Mich App 217; 469 NW2d 56 (1995), where the trial court allowed the respondent's counsel to withdraw after sixteen months of counsel not knowing his client's whereabouts and having no contact with her. This Court held that the right to counsel may be waived or relinquished. *Id*., 188 Mich App at 222. "Waiver is the *intentional* relinquishment or abandonment of a known right." *People v Carines*, 460 Mich 750, 762-763, n 7; 597 NW2d 130 (1999) (emphasis added, quotation marks and citation omitted). In the instant case, the period between the trial court's appointment of counsel and the adjudication hearing was only a few months, the parties knew that respondent had been incarcerated during part of this time period, he had issues with homelessness, and the record of the May 2017 hearing reveals that respondent wanted to parent his child and showed some confusion about the details of planned proceeding events, which the court undertook to clarify. It cannot be said that he intentionally relinquished or abandoned his right to counsel by not showing up at the October 2, 2017 adjudication hearing.

In light of the foregoing, we hold that the trial court clearly erred by proceeding to an adjudication under the circumstances presented here, and that the trial court's error affected respondent's substantial rights. *Kern v Blethen-Coluni*, 240 Mich App at 336. Thus, we reverse the trial court's order terminating respondent's parental rights and remand the case for a new adjudicative hearing and other appropriate proceedings and services. Our decision may merely delay the inevitable, but we find a parent's constitutional right to due process in termination proceedings well worth protecting.

Reversed and remanded. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Jane M. Beckering