*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

IN RE D. BORN FREE, Minor.

UNPUBLISHED
August 25, 2025
9:14 AM

No. 373198
Wayne Circuit Court
Family Division
LC No. 2023-000147-NA

Before: REDFORD, P.J., and RIORDAN and BAZZI, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating his parental rights to the minor child, DBF, under MCL 712A.19b(3)(b)(*i*) (physical or sexual abuse of child or a sibling), MCL 712A.19b(3)(g) (failure to provide care or custody), MCL 712A.19b(3)(j) (child will be harmed if returned to parent), MCL 712A.19b(3)(k)(*ii*) (criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate), and MCL 712A.19b(3)(k)(*ix*) (sexual abuse). We affirm the portion of the trial court's order determining that at least one statutory ground supported termination, but vacate the court's best-interest analysis and remand for further consideration of that issue.

## I. FACTUAL BACKGROUND

This matter stems from a child protective proceeding. Respondent is the father of DBF and nonrespondent, D. Williams, is the minor child's mother. The parties were never married. D. Williams has three other minor children with an unknown father, including IW.[1] These children are DBF's half-siblings. Respondent was D. Williams's partner and they lived at her home until approximately September 2022. In September 2022, Child Protective Services (CPS) was referred to investigate allegations that respondent sexually abused IW when she was six years old. D. Williams reported the incident after she walked into her bedroom, and she saw respondent's hand underneath IW's blanket, near the child's genital area. Lisa Elswick, a CPS investigator,

---

[1] D. Williams had a fifth child who passed away in 2023. The father of this child is unknown.

interviewed D. Williams. D. Williams contacted law enforcement and she accompanied IW to a local hospital, resulting in IW receiving a sexual abuse examination and forensic interview.

D. Williams subsequently forced respondent to move out of the home, and she ceased all forms of communication with respondent. DBF was not in the residence when the incident occurred. Rather, DBF had been in a temporary placement with respondent's mother, C. Lewis, in Houston, Texas, since approximately August 2022. After the incident involving respondent and IW, D. Williams intended on relocating DBF back to Michigan. While the temporary placement with C. Lewis was voluntary, respondent and C. Lewis refused to return DBF to D. Williams. When D. Williams arrived to retrieve DBF in December 2022, she contacted local law enforcement and CPS, who assisted in returning the child to her care.

In February 2023, petitioner, the Department of Health and Human Services (DHHS), filed a permanent custody petition requesting that the trial court take jurisdiction over DBF under MCL 712A.2(b)(1) (failure to provide proper care and custody due to neglect or abandonment), and MCL 712A.2(b)(2) (unfit home environment due to neglect, criminality, or depravity), and enter an order terminating respondents' parental rights to DBF under MCL 712A.19b(3)(b)(*i*), (g), (j), (k)(*ii*), and (k)(*ix*). The trial court authorized the petition, determined it was contrary to DBF's welfare to remain in a home with respondent because of his sexual abuse of IW, ordered DBF be placed with D. Williams, and suspended respondent's parenting time.[2]

Following a bench trial, the trial court determined there were statutory grounds to exercise jurisdiction over DBF under MCL 712A.2(b)(1) and (2), and there was clear and convincing evidence to support the termination of respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (g), (j), (k)(*ii*), and (k)(*ix*). The court did not address MCL 712A.19b(k)(*ix*) on the record, but it included the provision as a statutory ground for termination in its order. After a best-interest hearing, the trial court found that petitioner established, by a preponderance of the evidence, termination of respondent's parental rights was in the best interests of DBF. This appeal ensued.

II. ANALYSIS

A. JURISDICTION

Respondent argues that the trial court clearly erred by finding statutory grounds to assume jurisdiction over DBF. Respondent further argues that the proceedings resulted in a violation of his due-process rights. We disagree.

"We review the trial court's decision to exercise jurisdiction for clear error in light of the court's findings of fact[.]" *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the

---

[2] While respondent was charged regarding the alleged sexual abuse of IW, his criminal charges were subsequently dismissed.

witnesses." *Id.* at 296-297. "The interpretation and application of statutes and court rules are also reviewed de novo." *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014).

"To properly exercise jurisdiction, the trial court must find that a statutory basis for jurisdiction exists. Jurisdiction must be established by a preponderance of the evidence." *In re BZ*, 264 Mich App at 295 (citation omitted). When addressing jurisdiction, "the trial court must examine the child's situation at the time the petition was filed." *In re MU*, 264 Mich App 270, 279; 690 NW2d 495 (2004). Further, "the petitioner has the burden of proving . . . one or more of the statutory grounds for jurisdiction alleged in the petition[.]" *In re Sanders*, 495 Mich at 405; MCR 3.977(E)(2). The anticipatory-neglect doctrine allows a court to take jurisdiction over a child on the basis of a parent's treatment of a sibling or siblings; the doctrine "recognizes that [h]ow a parent treats one child is certainly probative of how that parent may treat other children." *In re Sluiter*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368266); slip op at 15 (quotation marks and citation omitted). Accordingly, when abuse occurs against one of the children within a family, this doctrine permits the trial court to assume jurisdiction over another child despite no abuse having occurred against that child. *Id.*

MCL 712A.2(b) governs a trial court's jurisdiction in child protection proceedings and states, in pertinent part:

The court has the following authority and jurisdiction:

* * *

(b) Jurisdiction in proceedings concerning a juvenile under 18 years of age found within the county:

(1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship . . . .

* * *

(2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in . . . . [MCL 712A.2(b)(1)-(2).]

In the instant case, the trial court assumed jurisdiction over DBF under MCL 712A.2(b)(1) and (2). Petitioner contended that DBF was at a substantial risk of harm under respondent's care on the basis of his sexual abuse of IW. Respondent denied the sexual abuse allegations. During the bench trial, the court opined: "[Respondent] was on the floor next to [IW] with his hand underneath a blanket ending somewhere around her genital area. That to me at least provides the preponderance of the evidence necessary to take jurisdiction . . . ." In its order of adjudication, the trial court further stated that respondent "offered no innocent explanation" regarding his improper

-3-

conduct, and respondent "got defensive and argumentative" when D. Williams confronted him in the bedroom with IW.

While respondent argues that petitioner failed to admit IW's medical records and forensic interview into evidence to substantiate the allegations, the trial court heard testimony regarding the subject incident by D. Williams. Respondent challenges the credibility of D. Williams's testimony because of her alleged inability to remember certain dates, but D. Williams sufficiently detailed respondent's conduct in the bedroom while he was alone with IW. D. Williams testified when she entered her bedroom, IW was sitting on the floor watching television, and respondent was "bending down with his hand . . . underneath [IW's] cover." D. Williams asserted that there was a bulge in the cover where respondent's arm was located over IW's lap. At the sight, D. Williams asked respondent, "What the ef [sic] are you doing?" Respondent "jumped up" with "his eyes wide open," and he answered, "Nothing." The trial court determined that D. Williams's testimony was "clear," believing D. Williams saw where respondent's hand was located in proximity to IW's body. Moreover, the court considered respondent's reaction to D. Williams's confrontation during the incident. Regardless, this Court must give "due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App at 296-297.

Respondent further contends that he provided proper care for DBF and he never abused the minor child. Although there was no evidence respondent abused DBF, the trial court found that DBF would likely suffer from injury or abuse in the future because of respondent's sexual abuse of IW, which is permissible under the doctrine of anticipatory neglect.[3] See *In re Kellogg*, 331 Mich App 249, 259; 952 NW2d 544 (2020) (stating, "The doctrine of anticipatory neglect recognizes that [h]ow a parent treats one child is certainly *probative* of how that parent may treat other children") (alteration and emphasis in original; quotation marks and citation omitted). The court's conclusion was substantiated by the nature of the familial relationship between respondent and IW preceding the sexual abuse incident. Before the incident, respondent resided with D. Williams and all four minor children for approximately two years, he cooked, cleaned, and accompanied the children to school, and D. Williams had considered respondent a good parent of her minor children. See *In re Mota*, 334 Mich App 300, 322; 964 NW2d 881 (2020) (stating, "Although there was only evidence of one act of sexual abuse, it was an especially egregious violation of a child who had looked to respondent for care and protection as a father figure"). Thus, the incident of sexual abuse within the home environment was sufficient for the court to find that DBF was at a substantial risk of harm to his mental wellbeing, MCL 712A.2(b)(1), and that the home environment because of cruelty, criminality, and depravity was unfit for him to live, MCL 712A.2(b)(2). Accordingly, the trial court properly assumed jurisdiction over DBF.

---

[3] While the trial court did not explicitly cite to the anticipatory-neglect doctrine during the proceedings, the doctrine's application is not dependent on the trial court expressing use of the doctrine during adjudication. See *In re Kellogg*, 331 Mich App 249, 259; 952 NW2d 544 (2020) (applying the anticipatory-neglect doctrine to a trial court's finding of jurisdiction when the trial court did not discuss the doctrine when it assumed jurisdiction).

B.  DUE PROCESS

Respondent further argues the trial court violated his due-process rights by overruling his counsel's objections to various questions posed by petitioner's counsel regarding facts not contained in the petition.  We disagree.

"Whether child protective proceedings complied with a parent's right to procedural due process presents a question of constitutional law, which [this Court] review[s] de novo."  *In re Sanders*, 495 Mich at 403-404.  To the extent respondent asserts the trial court's rulings to the objections were erroneous on any evidentiary grounds or violated his due-process rights, that argument is abandoned for lack of support.  See *In re Rippy*, 330 Mich App 350, 362 n 5; 948 NW2d 131 (2019) (stating, "Insufficiently briefed issues are deemed abandoned on appeal") (quotation marks and citation omitted).  Regardless, the trial court's rulings did not violate respondent's due-process rights.

"No State shall  . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."  US Const, Am XIV, § 1; Const 1963, art 1, § 17.  "A natural parent has a fundamental liberty interest in the care, custody, and management of his child[.]"  *In re Rood*, 483 Mich 73, 91; 763 NW2d 587 (2009) (quotation marks and citation omitted).  "Parents have a significant interest in the companionship, care, custody, and management of their children, and the interest is an element of liberty protected by due process."  *In re JK*, 468 Mich 202, 210; 661 NW2d 216 (2003).  This Court has explained:

> Recognizing that the right of a parent to make decisions concerning the care, custody, and control of his or her children is fundamental, and that due process demands that minimal procedural protections be afforded an individual before the state can burden a fundamental right, our Supreme Court held that a parent must be individually adjudicated as unfit before the state can interfere with his or her parental rights.  [*In re Kanjia*, 308 Mich App 660, 665; 866 NW2d 862 (2014) (quotation marks and citations omitted).]

"Procedural due process limits actions by the government and requires it to institute safeguards in proceedings that affect those rights protected by due process, such as life, liberty, or property."  *In re VanDalen*, 293 Mich App 120, 132; 809 NW2d 412 (2011) (quotation marks and citations omitted).  "The fundamental requisite of due process of law is the opportunity to be heard.  The hearing must be at a meaningful time and in a meaningful manner."  *In re Rood*, 483 Mich at 92 (quotation marks and citations omitted).  "The opportunity to be heard includes the right to notice of that opportunity."  *Id*. (quotation marks and citations omitted).

During the lower court proceedings, respondent testified that he provided financially for DBF and he responded positively when asked if he paid child support.  Petitioner's counsel asked if respondent was court-ordered to pay child support for DBF, and respondent's counsel objected for lack of foundation.  Petitioner's counsel argued that the question was appropriate because respondent indicated that he made child-support payments.  The trial court overruled the objection, noting that it wanted to know whether the financial support was court-ordered or whether such payments were made informally.  Respondent testified that he did not provide child support by

order of the Friend of the Court (FOC) and he was never court-ordered to do so. Petitioner's counsel questioned if respondent had a custody order for DBF, and respondent responded affirmatively.

Petitioner's counsel subsequently asked respondent whether he understood his legal rights under the custody order, and respondent replied, "Yes, I know my legal rights." Respondent's counsel interjected inquiring: "What is the relevancy of . . . these questions[?]" Petitioner's counsel stated that the question was relevant because the petition alleged respondent neglected to provide for the child and "if there's a Court order, [petitioner's counsel] want[s] to know if [respondent] understand[s] what that Court order means." Respondent's counsel argued that respondent's understanding of his legal rights as a father was irrelevant. Petitioner's counsel replied that respondent's understanding of his responsibilities as a legal parent were relevant to "the crux of statutory grounds in regards to jurisdiction," namely, whether he contributed "to the home environment of the child and not being able to meet the child's daily needs." The trial court overruled the objection because respondent's understanding of his "legal relationship" with the minor child was relevant to the matter of jurisdiction. The trial court opined that it would weigh the testimony, "and any other context is open for argument." Respondent then testified that his understanding of being a legal father was to be "[l]oving, caring, providing, nurturing, there as a parent . . . to be there for your child, which I am that." Respondent advanced that there was a court order providing that he had joint custody of DBF, presumably with D. Williams.

Respondent asserted that he was primarily responsible for providing for DBF's care, including supplying bottles, a stroller, clothes, diapers, and car seats, which totaled about $300 to $400 weekly. Respondent allegedly continued to advance financial support when DBF lived with respondent's father and C. Lewis, in the amount of approximately $200 or $300 each week. Respondent worked about 60 to 65 hours per week across two jobs. After petitioner's counsel questioned respondent regarding his income, respondent's counsel objected on the basis of relevance, arguing the "petition [did] not allege that [respondent] was not providing supplies, money, and care, in regard to [DBF]." Petitioner's counsel contended that the petition alleged respondent neglected to financially support DBF, which was pertinent to jurisdiction. Respondent's counsel reiterated that the petition did not specifically purport that respondent did not provide for DBF. Petitioner's counsel replied that "strict pleading is not required."

The trial court agreed, and it stated that the line of questioning of petitioner's counsel "goes to a jurisdictional ground." The court advanced that "it's a statutory citation, but it's still in the petition and it still is alleged . . . and it has to be shown in order to have the jurisdiction[.]" Respondent's counsel argued that the trial court allowed the question "without specifically outlining what it is that [respondent] has to defend himself against . . . that's called due process . . . ." The trial court clarified that it permitted the inquiry because the questions were relevant to jurisdiction, noting that petitioner still had to "prove all of the allegations in the petition[.]" The court acknowledged respondent's due-process objection, but the trial court stated that it could "differentiate" between whether there was abuse of a child and whether respondent fulfilled any mandatory child-support obligations.

Respondent proceeded to testify that he served as a parent of D. Williams's three other children, which included accompanying the minor children to school, in addition to nurturing and playing with the children. When questioned whether there was a parenting schedule between respondent and D. Williams for her minor children, respondent shared that he assisted with parenting the children after work. Respondent's counsel objected to the question regarding the parenting schedule on the basis of relevance. Petitioner's counsel argued that "the relevancy is what parenting he provided to the children," citing the alleged sexual abuse of IW. The trial court overruled the objection, allowing respondent to testify that he maintained a routine while watching D. Williams's children, which consisted of providing meals and helping with homework.

Notably, the petition included various allegations, including improper supervision and respondent's sexual abuse of IW. While D. Williams's minor children were not subjects of the permanent custody petition, the petition provided that the children were DBF's half-siblings. The petition further delineated the statutory grounds enabling the trial court to exercise jurisdiction, which included a lack of care and maintenance of any named children. Thus, it is not evident how any of the questions posed by petitioner's counsel concerned facts or information absent from the petition. Even assuming, arguendo, that the inquiries were improper, respondent cannot demonstrate harm. Rather, respondent generally benefited from the line of questioning as his answers detailed how much respondent provided and cared for the children, including DBF. The trial court additionally recognized petitioner had to "prove all of the allegations in the petition," it noted respondent's due-process objection, and it acknowledged the necessary findings to properly assume jurisdiction. Moreover, the primary basis on which the trial court assumed jurisdiction of DBF and terminated respondent's parental rights was the sexual abuse of IW, as opposed to any alleged lack of financial support or care on respondent's part. Accordingly, respondent was afforded an opportunity to be heard, and there are no procedural deficiencies related to his due-process rights.

## C. STATUTORY GROUNDS

Respondent argues the trial court clearly erred by finding statutory grounds for terminating his parental rights. We disagree.

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020). As this Court has detailed:

> At the termination hearing, the trial court, in rendering its termination decision under MCL 712A.19b, may take into consideration any evidence that had been properly introduced and admitted at the adjudication trial, MCR 3.997(E), along with any additional relevant and material evidence that is received by the court at the termination hearing, MCR 3.997(H). [*In re Mota*, 334 Mich App at 316.]

"This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App at 296-297.

Termination may be justified under more than one statutory basis, but only one basis under MCL 712A.19b(3) must be established by clear and convincing evidence to warrant the termination of parental rights. *In re Martin*, 316 Mich App 73, 90; 896 NW2d 452 (2016). In the instant case, the trial court terminated respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (g), (j), (k)(*ii*), and (k)(*ix*).

Grounds for termination exist under MCL 712A.19b(3)(b)(*i*) if "[t]he child or a sibling of the child has suffered physical injury or physical or sexual abuse" under circumstances when "[t]he parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home." In this case, D. Williams testified that she sent IW to the bedroom to watch television and instructed her to sit on the floor, and D. Williams planned on joining IW after she completed a task. When D. Williams entered the bedroom, the lights were off, and IW was sitting on the floor watching television with "her cover," and respondent was "bending down with his hand . . . underneath [IW's] cover." IW's legs were "together, [and] straight out," and respondent was "standing over her, bent down, with his hand underneath her cover." IW was wearing a t-shirt and shorts. IW's legs were covered, but D. Williams recognized respondent's hand underneath the cover near IW's lap because there was a bulge where respondent's arm was placed over IW's lap. Respondent was bent down beside IW. D. Williams confronted respondent asking: "What the ef [sic] are you doing?" Respondent "jumped up" with "his eyes wide open," answering, "Nothing." D. Williams noted that she did not see any movement underneath the cover. After D. Williams repeated the question, respondent repeated, "Nothing," several times. D. Williams accompanied IW to the bathroom and she questioned IW regarding what transpired.

D. Williams further testified that when she subsequently inquired regarding the incident, respondent "got to going off on [her]," informing D. Williams that she was "trippin." D. Williams directed respondent to leave the house permanently, which he did. Respondent was barred from residing in the home and appearing near any of the minor children, and D. Williams ceased all communications with respondent. D. Williams informed her cousin and sister about the incident, and she contacted law enforcement. The day of the incident, IW received a "rape kit," and D. Williams met with a CPS supervisor at the hospital. D. Williams additionally shared that when she attempted to retrieve DBF from the residence of C. Lewis, where the minor child temporarily resided, C. Lewis refused to return DBF to D. Williams's care, because respondent instructed C. Lewis to withhold the minor child.

In light of the aforementioned testimony, the court found that respondent's hand was under IW's blanket "somewhere around her crotch area," and when respondent was confronted regarding his improper conduct, respondent "offered no innocent explanation." Rather, respondent became "defensive and argumentative when asked again." The trial court was further concerned by respondent's reaction to D. Williams's questioning regarding the sexual abuse incident, and it was troubled by how respondent refused to return DBF to D. Williams's custody. To the extent

respondent challenges D. Williams's credibility as a witness, alleging that D. Williams was upset by respondent's failure to assist with the care of the minor children, this Court is obligated to defer to the trial court's credibility determination. *In re BZ*, 264 Mich App at 296-297. Furthermore, despite respondent's contentions to the contrary, D. Williams's testimony provided a sufficient factual basis for the trial court to determine whether respondent sexually abused IW. Additionally, the fact that IW is not respondent's biological child is irrelevant, as IW is DBF's half-sibling, and respondent himself testified that he acted as a father figure to D. Williams's minor children, irrespective of any biological relationship to him. *See In re Mota*, 334 Mich App at 323 (stating, "With respect to the purported bond between respondent and his children, there was also evidence of a bond between [the minor children's half-sister] and respondent, yet that did not prevent respondent from sexually exploiting and abusing her").

Given the circumstances, the trial court did not clearly err by determining that there were statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(b)(*i*), because there was clear and convincing evidence of respondent's sexual abuse of IW, and there was a reasonable likelihood that DBF would suffer from injury or abuse in the foreseeable future if placed in respondent's home. Because only one statutory ground must be established to terminate respondent's parental rights, and termination was proper under MCL 712A.19b(3)(b)(*i*), this Court need not consider additional grounds for termination. *In re Martin*, 316 Mich App at 90.

## D. BEST INTERESTS

Respondent argues that the trial court clearly erred when it determined that termination of his parental rights was in the best interests of DBF. We agree insofar as the trial court failed to address DBF's relative placement with D. Williams.[4]

"Even if the trial court finds that the [petitioner] has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021) (quotation marks and citation omitted). This Court reviews a trial court's best-interest determination for clear error. *Id*. at 276. "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App at 296-297.

---

[4] Given our resolution of the matter, we decline to address respondent's remaining challenges of the trial court's best-interest determination. But we note that the record reflects termination of respondent's parental rights may be appropriate, in part, because of respondent's sexual abuse of IW, and the broader implications of that misconduct on DBF's long-term care and stability. Nonetheless, for the reasons discussed herein, the trial court's failure to properly consider the role of relative placement rendered its best-interest analysis erroneously incomplete, and remand is necessary for the court to adequately account for that consideration and reexamine if termination is in the minor child's best interests. *In re CJM*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367565); slip op at 5-6.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). In making its determination, the trial court "should weigh all the evidence available to it," and may consider

> the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. Other considerations include the length of time the child was in care, the likelihood that the child could be returned to her parents' home within the foreseeable future, if at all, and compliance with the case service plan. [*In re Atchley*, 341 Mich App 332, 346-347; 990 NW2d 685 (2022), quoting *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 63; 874 NW2d 205 (2015).]

Moreover, "[a] child's placement with relatives is a factor that the trial court is *required* to consider." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015) (emphasis added). While placement with a relative weighs against termination, it is not dispositive because a trial court "may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012). In the majority of cases, it is in the child's best interests to be placed with his or her siblings. *Id*. "A trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal." *In re Olive/Metts Minors*, 297 Mich App at 43.

This Court recently determined that a minor child's placement with a biological parent at the time of the termination hearing must be considered in determining whether it is in child's best interests to terminate a respondent's parental rights. *In re Boshell/Shelton*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 371973); slip op at 10-11. The *Boshell/Shelton* Court explained:

> In the past, a child's biological parent was not recognized in the definition of "relative." *In re Schadler*, 315 Mich App 406, 413, 890 NW2d 676 (2016). However, MCL 712A.13a was amended by 2022 PA 200, effective October 7, 2022, and now defines a "relative" as any adult "[r]elated to the child within the fifth degree by blood, marriage, or adoption" MCL 712A.13a(1)(j)(*i*). The statute does not define the new phrase "within the fifth degree by blood," but a different chapter of the Probate Code of 1939, the Michigan Adoption Code, defines that particular phrase to include a parent. MCL 710.22(y). Therefore, we conclude that "relative" under MCL 712A.13a(1)(j) now includes a biological parent. [*Id*. at ___; slip op at 10.]

Despite the minor child's placement with his mother, D. Williams, the trial court failed to expressly consider the relative placement in its best-interest determination. This error necessitates reversal. *In re Olive/Metts Minors*, 297 Mich App at 43. Accordingly, we must vacate the trial court's best-interest analysis, and remand this case to the trial court for further proceedings not inconsistent with this opinion.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Michael J. Riordan
/s/ Mariam S. Bazzi